UNITED STATES of America,
Plaintiff-Appellee,

v.

Thomas Warner HOOPES,
Defendant-Appellant.

No. 76–1197.

United States Court of Appeals,
Tenth Circuit.

Submitted Oct. 18, 1976.

Decided Dec. 3, 1976.

Rehearing Denied Feb. 3, 1977.

Ramon M. Child, U. S. Atty., and Rodney G. Snow, Asst. U. S. Atty., Salt Lake City, Utah, for plaintiff-appellee.

David J. Knowlton, Ogden, Utah, for defendant-appellant.

Before PICKETT, HILL and McWILLIAMS, Circuit Judges.

PICKETT, Circuit Judge.

Appellant Hoopes was accused in a two count Information of violating 26 U.S.C. § 7203 by failing to file federal income tax returns for the years 1971 and 1972. Following a jury conviction he was sentenced on each count to imprisonment for a period of one year and to pay a fine of $10,000, the sentences to run consecutively. On appeal it is urged only that the trial court erred in refusing to instruct the jury on the theory of defense, which was that Hoopes had failed to file his 1971 and 1972 income tax returns relying in good faith upon the advice of attorneys.

The law is settled that in criminal cases a defendant is entitled to adequate instructions to the jury on his theory of defense, provided there is evidence to reasonably support the theory. *Speers v. United States,* 387 F.2d 698 (10th Cir.), cert. denied, 391 U.S. 956, 88 S.Ct. 1864, 20 L.Ed.2d 871 (1967); *Beck v. United States,* 305 F.2d 595 (10th Cir.), cert. denied, 371 U.S. 890, 83 S.Ct. 186, 9 L.Ed.2d 123 (1962). We are satisfied in this case that the evidence is not such as to reasonably support the theory that Hoopes, in failing to file his 1971 and 1972 income tax returns, was in good faith relying upon the advice of attorneys. A fair analysis of the evidence is that Hoopes, after years of concern, agitation, and study of the federal income tax laws and other governmental fiscal activities, decided on his own the course of action he would take, as he in effect testified, to bring the matter to a head. His conduct was an open defiance of the law and his claim that he acted in good faith upon advice of attorneys was obviously an afterthought.

For a number of years Hoopes had been a practicing dentist in Salt Lake City, Utah, with substantial yearly income. During those years he had become disenchanted with the fiscal policies of the United States and was very critical of the income tax law and procedures of the Internal Revenue Service. He discussed those matters with

many people and accumulated and read a mass of literature on the subjects. For the years 1968, 1969, and 1970 he filed Form 1040 income tax returns with the assistance of an accountant and paid the taxes due under protest. No civil litigation resulted from those protests. For the year 1971 Hoopes adopted a new course of action by filing a 1040 income tax form containing only his name and address. Across the form was written, "UNDER PROTEST I PLEAD THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION; ALSO ARTICLE I–SEC. 8, 10, THE FIRST, FOURTH, SEVENTH, TENTH AND FOURTEENTH AMENDMENTS TO SAME." The identical procedure was followed in 1972 when a 1040 form was filed, with some variation in the writing across the face of the form.[1] Regarding his reason for filing the 1040 form without any information concerning his income, Hoopes testified:

> I simply wanted to register a protest and get the Internal Revenue Service to face me in civil litigation whereby we could resolve some type of a disagreement. I felt they were transgressing upon the citizens' rights.

A special agent of the Internal Revenue Service interviewed Hoopes with reference to his 1971 return. The result of the interview was mostly a dissertation by Hoopes on his constitutional rights and ideological beliefs. He refused to allow the agent access to his records for the purpose of determining his income, stating that the refusal was the result of his belief that under the Constitution he was not required to divulge that information.[2] During the interview Hoopes did not claim that he was relying on the advice of an attorney when he filed the 1971 income tax return in blank. The Internal Revenue Service determined the income by other means and it is not contended that tax returns were not due for the years 1971 and 1972.

With reference to his consultation with attorneys on his tax matters, Hoopes testified that he discussed the matter with three lawyers, Robert Matheson of Salt Lake City, Utah, and William Drexler and Jerome Daly, both of Minnesota. Of these, only Mr. Matheson was a practicing attorney. He advised Hoopes that his plan of action "was a precarious course to follow . . . because there were many cases operating against that." Hoopes said he attended three lectures given by Drexler in 1972, 1973, and 1974 on the subject of the federal income tax. In addition to listening to the lectures, Hoopes discussed the tax matter with him on several occasions. At least two of these meetings were after Hoopes had decided on his course of action. Apparently Drexler advised him that his course of action was "proper." As to Jerome Daly, Hoopes attended one lecture given by him in May of 1972 in which Daly discussed a court case he had won in Minne-

---

1. In a similar case, *United States v. Porth*, 426 F.2d 519, 523 (10th Cir.), cert. denied, 400 U.S. 824, 91 S.Ct. 47, 27 L.Ed.2d 53 (1970), we held:

   . . . A taxpayer's return which does not contain any information relating to the taxpayer's income from which the tax can be computed is not a return within the meaning of the Internal Revenue Code or the regulations adopted by the Commissioner. . . .

2. With reference to this interview, the agent testified as follows:

   A. But I explained the penalty, then I further explained the penalties for not filing a tax return.
   Q. What did Dr. Hoopes state to you?
   A. Again he stated he was well aware of the law and that he had filed the letter with the Internal Revenue Service and he referred to it as a letter and that was all he was going to file.

Q. Did he state anything to you why he wasn't going to file or why he only filed the letter?
A. We went into a long discussion with regards to the Constitution and his belief on the Constitution that the Internal Revenue Code was in violation of the Constitution and that any law in violation of the Constitution did not have to be obeyed.
Q. What did you explain to him in that regard?
A. Well, as I said, we discussed for some time on this and I told him that I wasn't there to discuss or argue ideologies necessarily but that I was assigned to the investigation to investigate his tax return. I attempted to get access to his records so that we could file a correct tax return and these were denied me.

sota concerning the value of the dollar. Hoopes did not recall that Daly had mentioned income tax.

Over the years Hoopes had accumulated a mass of literature, court decisions, and other material which he thought supported his ideologies. He introduced in evidence 490 pages of that printed material, most of which was irrelevant to the issues of the case. It did, however, contain publications which disclosed that Drexler and Daly were tax protestors who had been disbarred from the practice of law in Minnesota. Each had been prosecuted for the same offense for which Hoopes was being tried. Drexler was acquitted, and Daly was convicted and his conviction affirmed. *United States v. Daly,* 481 F.2d 28 (8th Cir.), cert. denied, 414 U.S. 1064, 94 S.Ct. 571, 38 L.Ed.2d 469 (1973). In concluding his testimony, Hoopes stated that he now recognized that he might have made a "serious mistake" in following the course he did.

Hoopes knew, as do millions of other American citizens, that the law required him to file income tax returns. The law books are replete with criminal cases involving the willful failure to file federal income tax returns. Years ago, the Supreme Court, after recognizing the rule that it is a defense in a criminal action if the accused honestly and in good faith acted on advice of a lawyer, stated: "But, on the other hand, no man can willfully and knowingly violate the law, and excuse himself from the consequences thereof by pleading that he followed the advice of counsel." *Williamson v. United States,* 207 U.S. 425, 453, 28 S.Ct. 163, 173, 52 L.Ed. 278 (1908). In an analogous situation, the Fourth Circuit used substantially the same language. *See United States v. Painter,* 4 Cir., 314 F.2d 939, 943, cert. denied, 374 U.S. 831, 83 S.Ct. 1873, 10 L.Ed.2d 1054 (1963). Furthermore, one of the essential elements of the offense charged is wilfulness on the part of the accused. In defining wilfulness, the court instructed the jury as follows:

The specific intent of wilfulness—I must tell you about that—the specific intent of wilfulness is an essential element of the crime for failure to file an income tax return. The word "wilful" as used in this statute means voluntarily, purposefully, deliberately and intentionally as distinguished from accidental, inadvertent or negligent. Mere negligence, even gross negligence, is not sufficient to constitute wilfulness. You will note that the failure to act as charged in the two Counts of the Information is alleged to have been wilful. A failure to act is wilful if voluntary and purposeful and with the specific intent to fail to do what the law requires to be done, that is to say, with the bad purpose to disobey or disregard the law. I charge you that the only bad purpose necessary for the government to prove in this case is the deliberate intention not to file tax returns, which the defendant knew he was required to file, at the time he was required by law to file them.

*Compare United States v. Pomponio,* —— U.S. ——, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976).

The court also fully instructed the jury on the necessity of proving intent. Considering the instructions as a whole, the question of good faith was adequately included and there was no prejudicial error in the failure of the court to give a separate instruction on the subject. *Speers v. United States, supra; Beck v. United States, supra. See also United States v. Stone,* 431 F.2d 1286 (5th Cir. 1970), cert. denied, 401 U.S. 912, 91 S.Ct. 879, 27 L.Ed.2d 811 (1971); *New England Enterprises, Inc. v. United States,* 400 F.2d 58 (1st Cir. 1968), cert. denied, 393 U.S. 1036, 89 S.Ct. 654, 21 L.Ed.2d 581 (1969).

AFFIRMED.