UNITED STATES of America,
Plaintiff-Appellee,

v.

John F. GRISMORE,
Defendant-Appellant.

No. 76–1675.

United States Court of Appeals,
Tenth Circuit.

Submitted Sept. 27, 1977.

Decided Nov. 4, 1977.

Ramon M. Child, U. S. Atty. and Brent Ward, Asst. U. S. Atty., Salt Lake City, Utah, submitted on the brief for plaintiff-appellee.

John F. Grismore, pro se, submitted on the briefs for defendant-appellant.

Before McWILLIAMS, BREITENSTEIN and BARRETT, Circuit Judges.

BREITENSTEIN, Circuit Judge.

The jury found defendant-appellant Grismore guilty of all four counts of an indictment charging uttering and dealing in counterfeit obligations of the United States in violation of §§ 472 and 473, 18 U.S.C.A. He was sentenced to eight year concurrent terms on each count. We affirm.

On this appeal Grismore appears pro se. His brief is a tirade against the Federal Reserve System, the Internal Revenue Service, the federal judiciary, and lawyers. These attacks, based on religious and political views, are noted, but merit no discussion. Defendant, a tax protester, has long rebelled against the monetary and tax policies of the United States. He claims that, because of his opposition to these policies, he has been harassed and persecuted by federal officials and agents. The record shows that his troubles with federal tax and law enforcement officials have arisen from his disregard of the tax laws and from his violations of federal criminal statutes. Whatever difficulties he may have had were of his own making.

James Burrill, an informant working for the Utah Highway Patrol on a homicide case, met defendant in the Salt Lake County jail. Defendant offered to supply, and later did supply, Burrill with a quantity of counterfeit temporary Utah drivers' licenses. Subsequently, defendant asked Burrill if he knew of a buyer of counterfeit money. Burrill reported this query to Riley Blanscett, a Utah highway patrolman, who in turn reported to the United States Secret Service. After negotiations and clandestine meetings, defendant delivered to Blanscett counterfeit $20, $50, and $100 Federal Reserve notes for inspection. Blanscett kept

the notes and delivered them to the Secret Service. The transfer of these notes is the basis for Count One of the indictment.

On April 28, 1975, defendant met with Burrill and Blanscett in an Ogden, Utah, park. While in defendant's car, Blanscett gave defendant $3,700 of identifiable currency and received in return a key to a locker in the Greyhound Bus depot in Ogden. Defendant placed the $3,700 in his coat pocket and left alone in his vehicle. Blanscett and Burrill went to the locker and found $76,000 in counterfeit $50 and $100 Federal Reserve notes. These notes were the basis for the charges made in Counts Two and Three of the indictment.

Secret Service agents followed defendant after he left Burrill and Blanscett. They enlisted the help of a Utah patrolman who stopped defendant. He was immediately arrested and his car searched. The $3,700 was found in his coat pocket. In the trunk of the car were found about $575,000 in cut and uncut $20, $50, and $100 counterfeit notes. Possession of these counterfeit notes was the basis of the charge in Count Four of the indictment.

Defendant was in the business of buying and selling precious metal, some of it in the form of medallions. He admitted the meetings with Burrill and Blanscett and asserted that the $3,700 transaction was for the purchase of coins. Plaintiff's Exhibit 8 was a document entitled "Certified Receipt" which was signed by Melvin Rose, the pseudonym used by Blanscett in his dealings with defendant. The document says that the signer invested $3,750 with John F. Grismore "for the purpose of buying gold coins and silver coins." Defendant testified that he delivered a bag of coins to Blanscett. Blanscett testified that his signing of the document was necessary to complete the transaction for the counterfeit money and that he never received any coins but only received the key to the locker. Defendant claims that the counterfeit notes were all planted by federal agents. It is enough to say that the record sustains the jury verdict on each count.

Defendant says that he was denied his Sixth Amendment right to counsel. Defendant is an educated man familiar with courts and criminal prosecutions. Our records show, see unpublished opinion in case No. 73–1489, that he was convicted of forcibly interfering with the administration of the Internal Revenue Laws in 1971 and his conviction was affirmed. He was later convicted of uttering and possessing counterfeit obligations of the United States and that conviction was also affirmed. See *United States v. Grismore*, 10 Cir., 546 F.2d 844.

■ The court denied defendant's request that Jerome Daly, a disbarred Minnesota lawyer, see *In re Daly*, 291 Minn. 488, 189 N.W.2d 176, be permitted to represent him and instead appointed a Utah lawyer. Unable to secure the appointment of Mr. Daly, defendant chose to represent himself. The appointed lawyer was available throughout the trial to assist the defendant but his services were neither requested nor used. In his previous counterfeiting trial, defendant's request that Daly represent him was rejected. On appeal to this court, we rejected the same Sixth Amendment claims that defendant repeats now. See *United States v. Grismore*, 10 Cir., 546 F.2d 845, 847. There is no significant difference between the situation in the first case and that in the case now before us. We decline to reconsider our first decision. Defendant was deprived of no Sixth Amendment right to counsel.

■ Defendant says that he did not have a fair trial because the court did not instruct the jury that it should decide the law as well as the facts. We rejected a similar argument in the appeal of his first counterfeiting conviction, 546 F.2d at 849. We accept and follow that decision and have no need to enlarge on it.

■ The applicable statutes, 18 U.S.C. §§ 472 and 473, proscribe uttering and dealing in counterfeit obligations and securities of the United States. Each count of the indictment refers to counterfeit Federal Reserve notes. Defendant argues that Feder-

al Reserve notes are not obligations of the United States. Section 8, 18 U.S.C., defines the term "obligation or other security of the United States" to include "Federal Reserve notes." We are not impressed with defendant's harangue against the monetary and fiscal policies of the United States. His rejection of those policies is no ground for acquittal. Defendant's effort to reargue the Federal Reserve note question, which we decided against him in his appeal from his first counterfeiting conviction, see 546 F.2d at 847, is of no avail.

The charged offenses occurred on April 24 and 28, 1975. The indictment was returned on June 17, 1975, and defendant was arraigned on July 15, 1975. The five-day trial began on March 11, 1976. Defendant says that he was denied his Sixth Amendment right to a speedy trial.

The case fell before Judge Anderson who recused himself and asked that the case be reassigned. It was subsequently set for trial before Judge Powell of the Eastern District of Washington in September, 1975. Judge Powell died. The case then went to Judge Ritter who recused himself. It was returned to Judge Anderson and on January 29, 1976, was assigned to Judge Brimmer of the District of Wyoming. In the period between indictment and trial, defendant, who was at liberty on bond, filed various motions which were heard and overruled.

■ Defendant claims violation of the Speedy Trial Act, 18 U.S.C. § 3161 et seq., in that arraignment and trial were not held within the time limits set by § 3161(c). These limits do not apply to individuals indicted before July 1, 1976. See § 3163(b). The sanctions for non-compliance with the time limits are not effective until July 1, 1979. See § 3163(c). There was no violation of the Speedy Trial Act.

■ Pursuant to § 3164 of the Speedy Trial Act, the District of Utah adopted an interim plan for the prompt disposition of criminal cases which became effective September 29, 1975. Its provisions for arraignment do not apply because defendant had been arraigned previously. Its 180-day provision for trial did not begin to run until the effective date of the rule, and defendant was tried within that period. The plan also provided that, subject to the court's power to dismiss for unnecessary delay, non-conformity with the time provisions for arraignment and trial do not require the dismissal of the action. No violation of the local rule occurred in the instant case.

■■ Independently of the Speedy Trial Act, defendant asserts that under *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, he was denied his Sixth Amendment right to a speedy trial. *Barker v. Wingo* identifies four pertinent factors, the "length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 U.S. at 530, 92 S.Ct. at 2192. The delay was about nine months from indictment to trial. It was caused in large part by the difficulty in getting a judge. The record shows no request by defendant for trial, nor any prejudice caused by delay. Defendant had a fair trial and was deprived of no statutory or constitutional right to a speedy trial.

Throughout the trial, and in his appellate brief, defendant emphasizes his religious beliefs against a welfare state which, he says, exists at least in part because of the currency system established by the Federal Reserve Act, 12 U.S.C. § 221 et seq. These beliefs are said to be protected by the First Amendment and to preclude a prosecution on the counterfeiting charges of the indictment.

■ The purpose of the Establishment Clause of the First Amendment is to ensure governmental neutrality in matters of religion. *Gillette v. United States*, 401 U.S. 437, 449, 91 S.Ct. 828, 28 L.Ed.2d 168. The counterfeiting laws, which defendant is charged with violating, apply to everyone regardless of religious belief. The First Amendment's guaranty of freedom of belief is absolute, but this concept does not guarantee freedom to act. "Conduct remains subject to regulation for the protection of society." *Cantwell v. Connecticut*, 310 U.S. 296, 304, 60 S.Ct. 900, 903, 84 L.Ed. 1213;

see also *Warren v. United States*, 10 Cir., 177 F.2d 596, 600, cert. denied, 338 U.S. 947, 70 S.Ct. 485, 94 L.Ed. 584. As said in *Reynolds v. United States*, 98 U.S. 145, 166–167, 25 L.Ed. 244, to permit a defendant to excuse conduct by reliance on religious belief,

> "would be to make the professed doctrines of religious belief superior to the law of the land, and in effect to permit every citizen to become a law unto himself. Government could exist only in name under such circumstances."

Defendant's religiously motivated belief in the invalidity of the Federal Reserve Act does not give him license to deal in counterfeit obligations of the United States.

After the government had rested its case and the court had denied a defense motion for judgment of acquittal, defendant moved orally for the issuance of subpoenas requiring the presence at the trial of some 30 witnesses named on a list which he presented. The court ordered subpoenas for a number of them but refused to do so for several federal judges and bankers who were not shown to have any knowledge of the facts pertaining to the charges laid in the indictment.

 Rule 17(b), F.R.Crim.P., provides that the court shall order a subpoena for a witness upon a showing of defendant's inability to pay witness fees and of the necessity of the presence of the witness for an adequate defense. The right given by the rule is not absolute but is addressed to the sound discretion of the court. *Murdock v. United States*, 10 Cir., 283 F.2d 585, 587, cert. denied, 366 U.S. 953, 81 S.Ct. 1910, 6 L.Ed.2d 1246; see also *Speers v. United States*, 10 Cir. 387 F.2d 698, 701–702, cert. denied, 391 U.S. 934, 88 S.Ct. 1844, 20 L.Ed.2d 855. The court heard defendant and held that the witnesses for whom subpoenas were denied were not necessary for an adequate defense. We agree. The court exercised its discretion properly.

Nine days before the trial began, defendant presented a written motion asserting the disqualification of Judge Brimmer. The requirements of 28 U.S.C. § 144 were not satisfied because the motion was not timely and the required certificate of good faith was not provided. The ground for the motion was that the judge was a defendant in a suit brought by one Afflerbach against the American Bar Association and several hundred United States Justices and Judges charging deprivation of the plaintiff's civil rights through monopolization of legal services. The suit had been dismissed about eight months before the start of the trial of the instant case. See *Afflerbach v. American Bar Association*, D.C.Wyo., 401 F.Supp. 108. Judge Brimmer was a member of the American Bar Association at the time but took office as a United States District Judge after the dismissal of the case. Defendant said that he had filed in Utah a suit similar to Afflerbach's. He conceded that Judge Brimmer was not then a defendant in that suit but said that he might be made one.

 Defendant has failed to show any ground of disqualification under § 144 or § 455, 28 U.S.C. A judge is not disqualified merely because a litigant sues or threatens to sue him. One other matter should be mentioned. In his brief, defendant intemperately and scurrilously attacks Judge Brimmer. The record shows convincingly that Judge Brimmer presided over this long and difficult trial with complete impartiality and outstanding patience. Defendant had a fair trial.

Affirmed.