UNITED STATES of America, Plaintiff-Appellee,

v.

L. Shyrl BROWN, Defendant-Appellant.

No. 77–1761.

United States Court of Appeals, Tenth Circuit.

Submitted on Briefs Feb. 14, 1979.

Decided April 12, 1979.

Rehearing Denied July 18, 1979.

---

250

Ronald L. Rencher, U. S. Atty., and Max D. Wheeler, Asst. U. S. Atty., Salt Lake City, Utah, for plaintiff-appellee.

L. Shyrl Brown, pro se.

Before BARRETT, DOYLE and McKAY, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

L. Shyrl Brown was found guilty by a jury on charges of willful failure to file his individual income tax returns for the years 1971, 1972 and 1973. What happened was that the appellant filed 1040 forms which contained no information at all from which federal income tax liability could be com-

puted. In the blanks provided for dollar amounts, he inserted "unknown" or that the amounts were protected by the Fifth Amendment against self-incrimination or other constitutional provisions. On occasion he inserted a small amount such as $22.50, which represented what he received in silver certificates or silver coin.

At the trial the evidence showed that he had adequate gross income in each of the three years in question so as to require that he file a return. There was no shortage of evidence in support of any of the three charges.

The issue on which there is no longer any doubt is whether the described procedure fulfills the requirement for the filing of a return. Secondary contentions raised include the following:

That there was a denial of a speedy trial under the Sixth Amendment or the Speedy Trial Act.

That the trial judge erred in denying appellant's motion to suppress the evidence which had been obtained from third parties through IRS summonses.

That there was a denial of assistance of counsel, constituting deprivation of Sixth Amendment rights.

That it was error to refuse to instruct the jury on the defense of good faith.

That the trial court erred in refusing to grant the filing of a bill of particulars.

## I.

The main contention is, of course, that the appellant's attempted filing of the 1040's during 1971, 1972 and 1973 failed to satisfy the filing requirement. He says that he cannot be convicted of not filing when he did file purported returns, which disclosed nothing, and that he was perfectly free to assert the Fifth Amendment privilege where answers would necessarily lead to criminal prosecution.

The government's position is that the filing requirement of 26 U.S.C. § 7203 is based on the assumption that the forms will contain enough information from which the government can compute his liability; that the insertion of words such as "unknown," "Fifth Amendment," or "privacy" in the blanks is simply an avoidance effort.

■ The matter in issue is not new. The law is now established that failure to provide any information is tantamount to no return at all.[1]

■ The return filed in this case is similar to other protest returns in which there has been previous testing. So when, as here, an accused is charged pursuant to 26 U.S.C. § 7203 with failure to file and it appears that his attempt was a pretext which was no more than a formality, it is tantamount to no filing at all.

The appellant further contends that he was protected in this because of his commitment to act in a way which was at odds with the income tax law, whereby any information he would submit would constitute self-incrimination. He says that he claimed the privilege and he is entitled to it. He relies on *Garner v. United States*, 424 U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976). Appellant misapprehends *Garner*. The Supreme Court in that case ruled that the privilege against self-incrimination guaranteed by the Fifth Amendment was not violated for the reason that the defendant made incriminating statements in his tax returns and failed to assert the privilege. In that instance the defendant was a gambler and the evidence was used in a criminal prosecution for gambling, a nontax offense. The Supreme Court emphasized in that case that

---

1. *See United States v. Irwin*, 561 F.2d 198, 201 (10th Cir. 1977), *cert. denied*, 434 U.S. 1012, 98 S.Ct. 725, 54 L.Ed.2d 755 (1978); *United States v. Smith*, Nos. 77–1864 and 77–1865 at 4 (10th Cir. May 12, 1977); *United States v. Dillon*, 566 F.2d 702, 703 (10th Cir. 1977), *cert. denied*, 435 U.S. 971, 98 S.Ct. 1613, 56 L.Ed.2d 63 (1978); *United States v. Hoopes*, 545 F.2d 721, 722 & n.1 (10th Cir. 1976), *cert. denied*, 431 U.S. 954, 97 S.Ct. 2675, 53 L.Ed.2d 270 (1977); *United States v. Porth*, 426 F.2d 519 (10th Cir.), *cert. denied*, 400 U.S. 824, 91 S.Ct. 47, 27 L.Ed.2d 53 (1970).

the claims of privilege we consider here are only those justified by a fear of self-incrimination *other than under the tax laws.*

*Id.* at 651 n.3, 96 S.Ct. at 1180 n.3 (emphasis added).

■ The court in *Garner* also said that it was not disturbing the determination that it gave in *United States v. Sullivan,* 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037 (1927), wherein it held that the privilege against self-incrimination was not a defense to prosecution for failing to file a return. The Court stated that the privilege could be sought against specific disclosures if the form of return furnished answers which the defendant was privileged from making and which he could have raised in the return, but the Court emphasized that this could not justify the refusal to make any return at all. *See Sullivan, supra,* at 263, 47 S.Ct. 607. The conclusion to be drawn is that the Fifth Amendment does not protect one who has received illegal income from accounting for his income on a return. A conviction for failure to file was upheld in *Sullivan,* where gains from illicit liquor traffic had been realized and no return had been filed. *Id.* at 264–65, 47 S.Ct. 607.

■ A careful reading of *Sullivan* and *Garner,* therefore, is that the self-incrimination privilege can be employed to protect the taxpayer from revealing the information as to an illegal source of income, but does not protect him from disclosing the amount of his income. *United States v. Sullivan, supra,* 274 U.S. at 263.

■ The appellant here is not aided by *Garner* and *Sullivan* because he attempts to use the Fifth Amendment to avoid disclosing even the amount of his income and this is not protected by the Fifth Amendment. Instead it is a simple attempt to prevent the communication to the government of the amount of the tax. Necessarily it is an illegal effort to stretch the Fifth Amendment to include a taxpayer who wishes to avoid filing a return.[2]

*United States v. Irwin, supra* at 201, holds that the claim of privilege is not allowed to accomplish avoiding the disclosure of information as to tax liability. After all, the entire theory of income tax is based upon individual disclosure, and the compelling of income tax filing is fully recognized as not violating the Fifth Amendment.[3]

Neither the appellant's claim that what he filed constituted a return nor his contention that he has a right to use the Fifth Amendment to bolster his position has merit.

## II.

Appellant next contends that he was deprived of a speedy trial.

The facts as to this are that the information was filed June 2, 1976, the appellant was arrested June 3, 1976, and arraignment was first scheduled for July 1, 1976. On the latter date the appellant appeared without counsel and stated that he wished to have counsel. On this basis the arraignment was delayed until he could obtain counsel, but on August 16, 1976, he was finally arraigned even though he had not employed counsel. The trial to the jury was scheduled for October 12, 1976. The trial was not held on the 12th, and on October 13, appellant filed a motion to strike predicated on the Speedy Trial Act. On November 12, 1976, a hearing was scheduled, but this hearing was vacated at the appellant's request.

On June 6, 1977, a jury trial was again scheduled. The record fails to disclose the cause of the delay. There is no indication in the record as to why the case was not

2. *United States v. Irwin,* 561 F.2d 198, 201 (10th Cir. 1977), *cert. denied,* 434 U.S. 1012, 98 S.Ct. 725, 54 L.Ed.2d 755 (1978); *United States v. Smith,* Nos. 77–1864 and 77–1865 at 4 (10th Cir. May 12, 1977).

3. *United States v. Irwin, supra* at 201; *United States v. Smith,* Nos. 77–1864 and 77–1865 at 3 (10th Cir. May 12, 1977); *Pauldino v. United States,* 500 F.2d 1369 (10th Cir. 1974); *United States v. Smith,* 484 F.2d 8, 10 (10th Cir. 1973), *cert. denied,* 415 U.S. 978, 94 S.Ct. 1566, 39 L.Ed.2d 874 (1974).

tried on October 12, 1976. On June 3, 1977, appellant sought to dismiss the indictment contending for the first time that his Sixth Amendment rights had been violated and again that the Speedy Trial Act had been violated. This motion was denied on June 6, and a jury trial was then scheduled for July 5, 1977. Appellant appeared without counsel on July 5 and 6, although he continued to maintain that he wished to have counsel. Trial commenced July 7, 1977.

It would appear that the reasons for the delay in commencing the trial were the illness of Judge Ritter and an overcrowded docket, together with the appellant's refusal to obtain counsel. The prosecution did not seek any of the delays.

Was the Speedy Trial Act violated?

■ Appellant says that the time from the filing of the information on June 2, 1976 to trial on July 7, 1977, a period of about 13 months, was excessive. The limitations of 18 U.S.C. § 3161(c), Speedy Trial Act, do not apply to offenses in which the information was filed on or before July 1, 1976.[4]

Here the information was filed June 2, 1976, which was before the July 1, 1976 deadline and, therefore, the limitations do not apply here. There is a 180-day restriction following the filing of the information. However, it is not a compulsory restriction. It is said to be merely directory in cases filed before July 1, 1976. Sanctions like dismissal are not effective until July 1, 1979 under § 3163(c). *United States v. Grismore,* 564 F.2d 929, 932 (10th Cir. 1977); *United States v. Carpenter,* 542 F.2d 1132, 1134 (9th Cir. 1976).

Based on the effective dates of the Act, dismissal was not mandated by the Act.

As far as the alleged constitutional violation, the Supreme Court has held that a balancing test should be applied here. It calls for the weighing of the circumstances. *Barker v. Wingo,* 407 U.S. 514, 522, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The Court said that four factors are to be considered: the length of the delay, the reason for it, defendant's assertion of his right (at the time), and prejudice to the defendant. *Id.* at 530,[5] 92 S.Ct. 2182.

We are not saying that the list of factors given in *Barker* is necessarily exclusive. The Supreme Court held that there was no denial of the right to a speedy trial under the Constitution, notwithstanding the passage of five years from arrest to trial. *Id.* 407 U.S. at 533, 536, 92 S.Ct. 2182. Among the reasons given for the delay was the request by the prosecution for continuances in order to first convict the accomplice. *Id.* at 516, 92 S.Ct. 2182. The only strong excuse for the delay, the Supreme Court said, was the seven month delay attributable to the illness of an important government witness.

It was said also in *Barker v. Wingo, supra,* that failure on the part of a defendant to demand a speedy trial did not automatically constitute a waiver of the right. Nevertheless, Barker waited three and one-half years after arrest to raise any objection. 407 U.S. at 516, 524–25, 92 S.Ct. 2182. In any event, the record revealed that defendant was not anxious to have a speedy trial; that he was more interested in having the accomplice tried and acquitted. Moreover, there was no substantial prejudice because the defendant was unable to show that his ability to present a defense was impaired, and he was released on bond during most of the time in question. 407 U.S. at 534, 92 S.Ct. 2182. No doubt he was

4. 18 U.S.C. § 3163(b); *United States v. Grismore,* 564 F.2d 929, 932 (10th Cir. 1977), *cert. denied,* 435 U.S. 954, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978).

5. This court has repeatedly used these factors in determining whether there has been a denial of the right to a speedy trial. *See, e. g., United States v. Stoddart,* 574 F.2d 1050, 1054 (10th Cir. 1978); *United States v. Grismore,* 564 F.2d 929, 932 (10th Cir. 1977), *cert. denied,* 435 U.S. 954, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978); *United States v. Hay,* 527 F.2d 990, 994 (10th Cir. 1975), *cert. denied,* 425 U.S. 935, 96 S.Ct. 1666, 48 L.Ed.2d 176 (1976); *United States v. Ramirez,* 524 F.2d 283, 285 (10th Cir. 1975); *United States v. Mackay,* 491 F.2d 616, 620 (10th Cir. 1973), *cert. denied,* 416 U.S. 972, 94 S.Ct. 1996, 40 L.Ed.2d 560 (1974).

prejudiced from the anxiety that he felt while awaiting trial.

In any event, the Supreme Court ruled that the facts that the defendant wished to avoid a speedy trial and was not substantially prejudiced outweighed the factor of delay, whereby he was not denied the right to a speedy trial. 407 U.S. at 536, 92 S.Ct. 2182.

At bar the delay was not extensive, although the number of months does not necessarily affect the question of denial. The record is unclear as to the cause of the delays, but we can assume that it was due to the judge's illness and the docket problems which existed in Utah.

■ If, of course, the government was seeking a delay in order to prejudice the defendant in presentation of his defense, the fact of delay would assume some weight against the government. *See Strunk v. United States*, 412 U.S. 434, 436, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973); *Barker v. Wingo*, 407 U.S. 514, 531, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The reason, such as overcrowded dockets, weighs against the government's position, but not as strongly as it would if there was some evidence that the prosecution was delaying the case as a tactical matter. Here such is not indicated. Indeed the appellant did not demand a speedy trial. He was more interested in delay, and when the question came up in October 1976, he requested that the motion not be considered at that time. It was not until June 1977 that he did raise the issue just before going to trial. When the trial started, appellant claimed that he was not ready. The trial court rejected this contention since he had had 13 months to get ready.

As indicated above, no prejudice such as being held in jail awaiting trial is present here. Oppressive pretrial incarceration may well produce prejudice in that it can impair the defendant's ability to defend himself. But here the appellant was not hampered.[6]

■ While prejudice is not essential to a violation, there is some reluctance to find a speedy trial deprivation where there is no prejudice.[7]

■ This court has taken the position that the mere passage of time per se does not give rise to a violation of the Constitution. *See United States v. Spoonhunter,* 476 F.2d 1050, 1057 (10th Cir. 1973); *United States v. Holmes,* 453 F.2d 950, 953 (10th Cir.), *cert. denied,* 406 U.S. 908, 92 S.Ct. 1618, 31 L.Ed.2d 819 (1972). Undoubtedly the appellant believed that the passage of time of itself would provide a basis for argument that the right to a speedy trial had been violated. As we have shown, however, this is not in accordance with the balancing test that applies.

Similarly, the contention that he was deprived of his Sixth Amendment right to a speedy trial is not meritorious since it was attributable to efforts by the appellant to delay the proceedings so that he could defend himself. The prosecution never did ask for a delay.

Based then on the circumstances presented,. we conclude that the district court's ruling that the defendant was not deprived of either Sixth Amendment rights or his statutory right to a speedy trial was not error.

### III.

Appellant claims that the failure to suppress evidence which the government obtained by use of summonses violated his rights under the First, Fourth, Fifth and Ninth Amendments to the Constitution of the United States. The trial court denied

---

**6.** The appellant presented no testimony by anyone in his defense. The defense relied entirely on the claim that the appellant's actions had not been willful.

**7.** *See, e. g., United States v. Grismore,* 564 F.2d 929, 932 (10th Cir. 1977), *cert. denied,* 435 U.S. 954, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978); *Unit-*

*ed States v. Goeltz,* 513 F.2d 193, 197 (10th Cir.), *cert. denied,* 423 U.S. 830, 96 S.Ct. 51, 46 L.Ed.2d 48 (1975); *United States v. Merrick,* 464 F.2d 1087, 1090–91 (10th Cir.), *cert. denied,* 409 U.S. 1023, 93 S.Ct. 462, 34 L.Ed.2d 314 (1972).

this motion and bank records were used at the trial for the purpose of establishing that the appellant's income for each of the three years in question was sufficient to file a return.

Appellant made a post trial attempt, on July 27, 1977, to establish that the IRS. investigation of him was entirely criminal and not partly civil. Appellant maintains that all of the evidence obtained by the IRS summonses should have been suppressed, but the evidence from the IRS was to the contrary. That agency said that it issued the summonses for both civil and criminal purposes. The summonses were issued to various banks for the purpose of obtaining records of the appellant's transactions.

 26 U.S.C. § 7602 provides as follows:

> For the purpose of . . . making a return where none has been made, determining the liability of any person for any internal revenue tax . . ., the Secretary is authorized . . . [t]o summon . . . any other person the Secretary may deem proper . . . to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry . . . .

The above provision limits the reasons for which the IRS can issue such a summons. Basically it is usable in order to make a return where none has been made, whereby the liability of any person can be determined. It cannot be used solely for the obtaining of evidence for criminal prosecution.[8] The § 7602 summons can be issued and used in order to aid an investigation which is seeking to ascertain whether criminal conduct has occurred, but this summons must be issued in good faith and prior to the recommendation for criminal prosecution by the IRS to the Justice Department. *United States v. LaSalle National Bank,* 437 U.S. 298, 307, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978); *Donaldson v. United States,* 400 U.S. 517, 521, 533, 536, 91 S.Ct. 534, 27

L.Ed.2d 580 (1971); *United States v. Billingsley,* 469 F.2d 1208, 1209 (10th Cir. 1972).

Section 7602 allows a special agent of the IRS to issue a summons where there exists an investigation pursuing civil and possible criminal consequences. *LaSalle National Bank, supra* at 309, 98 S.Ct. 23, 57; *Donaldson, supra* at 520, 532, 535, 91 S.Ct. 534; *Couch v. United States,* 409 U.S. 322, 324, 326, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973); *United States v. Bray,* 546 F.2d 851, 854 (10th Cir. 1976). Inevitably a joint investigation will take place since criminal and civil elements are frequently intertwined. *LaSalle National Bank, supra* at 309, 98 S.Ct. 2357.

Apparently the most important limitation is the requirement of good faith which means that the IRS is pursuing a civil tax determination or collection. *LaSalle National Bank, supra* at 318, 98 S.Ct. 2357. Also, good faith contemplates that there is a bona fide effort to get information which is not within the Commissioner's possession and that all administrative steps required by the Code have been followed. *LaSalle National Bank, supra* at 313–14, 98 S.Ct. 2357.

Appellant's argument is that the IRS did not comply with the special provisions set forth in § 7609. However, this section applies only to summonses issued after February 28, 1977. The summonses here were issued prior to that date.

 The appellant at bar did not offer any evidence that the IRS investigation was entirely criminal. The IRS, on the other hand, did offer evidence to the contrary. So there is evidence of the good faith of the IRS. There is no evidence which refutes this. The appellant had an opportunity to pursue this line of inquiry, but did not do so.

 The law has established that a summons directed to a third party bank does not violate defendant's Fourth Amendment

---

8. *United States v. LaSalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978); *Donaldson v. United States,* 400 U.S. 517, 521,

533, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971); *United States v. Bray,* 546 F.2d 851, 854 (10th Cir. 1976).

rights.[9] The records of the bank are neither owned nor possessed by a person in the position of the appellant who has no proprietary interest. *See United States v. Miller,* 425 U.S. 435, 440, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976).

 Nor can it be said that the third party summons to a bank violates a defendant's Fifth Amendment privilege against self-incrimination. *Fisher, supra* at 397–98, 408, 409, 96 S.Ct. 1569; *Couch v. United States,* 409 U.S. 322, 328, 329, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973); *Donaldson, supra* at 523, 91 S.Ct. 534. The Fifth Amendment is limited to compulsion of the accused to testify against himself, but incriminating evidence from third parties does not constitute testifying against oneself. *Couch, supra* at 328, 93 S.Ct. 611. In *Donaldson, supra* at 523, 91 S.Ct. 534, the Supreme Court held that the defendant had no proprietary interest in routine business records of another, and therefore there was no violation of defendant's Fifth Amendment rights.

 We conclude that the allegation that the appellant's right to privacy under the First, Fourth, Fifth and Ninth Amendments was violated also lacks merit. There is no valid expectation of privacy in these records and this is a requirement of *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), for a Fourth Amendment claim. *Couch, supra* at 336 n.19. For a Fourth or Fifth Amendment violation, an expectation of privacy is required. *Miller, supra* at 442–43, 96 S.Ct. 1619; *Fisher, supra* at 399, 96 S.Ct. 1569; *Couch, supra* at 336, 93 S.Ct. 611; *United States v. Continental Bank & Trust Co.,* 503 F.2d 45, 49 (10th Cir. 1974). Checks and deposit slips are not confidential communications. *Miller, supra* at 442–43, 96 S.Ct. 1619.

 The Supreme Court has had occasion to pass on the contention that summoning records such as those at bar violates the First Amendment, and has held that it does not. *See Fisher, supra* at 401 n.7, 96 S.Ct. 1569.

The question remains whether suppression is a proper remedy in circumstances like the present. In this case none of the appellant's constitutional or statutory rights were violated by the issuance of a third party summons. The district court was correct therefore in refusing to suppress the information obtained.

The summonses of the IRS to the Mormon Church did not violate his First Amendment rights. First of all, there is no record before us showing that such summonses were ever issued or that they generated any evidence at the trial. An issue not raised in the trial court cannot be raised for the first time on appeal.

Accordingly, we do not consider it.

### IV.

The appellant has contended that he was deprived of the effective assistance of counsel. His complaint is that he was not permitted to have a lay person represent him. The trial court would not designate such an individual and indeed it would be unable to do so under the relevant statute. He contends that he was in an unfavorable position because he could not persuade any attorney to represent him since he was a tax protestor. He does not contend that he was unable to afford an attorney.

On July 1, 1976, when the appellant first appeared for arraignment, he was not represented and because of that the arraignment was delayed. On August 16, 1976, appellant again appeared without counsel and the court proceeded with the arraignment and entered not guilty pleas on each of the three counts. The judge advised the defendant that he would be well advised, and that it would be in his best interests, if he obtained counsel.

Appellant appeared on July 5, 1977, which was a little less than a year after his first appearance. Still he did not have

---

9. *United States v. Miller,* 425 U.S. 435, 440, 442–43, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976); *Fisher v. United States,* 425 U.S. 391, 401 n.7, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *California Bankers Ass'n v. Shultz,* 416 U.S. 21, 53, 94 S.Ct. 34, 38 L.Ed.2d 48 (1974) (dictum); *Donaldson v. United States,* 400 U.S. 517, 522, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971).

counsel. He advised the court that he wished to be represented by someone who was not a member of the bar. The court refused to allow this. The court recommended once again that the appellant employ counsel of his choice. When the appellant appeared in court on July 6, 1977, he had been unable to find a member of the bar to represent him. He was asked who had refused him, and he was able to name only one lawyer whom he had asked and who had refused to accept the assignment. He was again told to get his own lawyer and if he appeared for trial without counsel, the court would assign an attorney to sit with him.

On July 7, the appellant appeared without an attorney and said that he had been unable to get one. The court was advised by the marshal that the appellant had sat in the courtroom all the preceding afternoon. The appellant said that he had not obtained an attorney because he thought that the case would be dismissed for lack of a speedy trial. In any event, the court refused to tolerate further delay. Mr. Hansen, a respected attorney, was appointed to aid the appellant. The court was disposed to have Mr. Hansen try the case, but relented and said that defendant could try the lawsuit if he behaved and did not become obstructive. During the proceedings, the appellant apparently preferred to allow Mr. Hansen to conduct the trial for him and at the close of the trial, appellant expressed his thanks and appreciation for Mr. Hansen's assistance.

█ The trial court was correct in denying appellant's request for a lay person to represent him. The Sixth Amendment guarantee does not contemplate that a lay person can be appointed or designated to represent an accused.[10] "Counsel" refers to a person authorized to practice law.[11] Even where it has been held permissible to have a lay person, it has been within the court's discretion to disallow such representation.[12]

█ The Supreme Court has ruled that a defendant in a criminal proceeding has the right under the Sixth Amendment to represent himself.[13] Defendant's decision to defend himself in the *Faretta* case was voluntary and with the understanding of the risks involved. In holding that the accused can defend himself, the Supreme Court did not expressly or by implication say that he had the right to designate a lay person to represent him.

From the record it would appear that appellant showed a lack of decision as to whether he wanted an attorney or whether he wanted to represent himself, and there is an indication that he used that issue as a means to further delay the proceeding. Accordingly, the trial court took the only approach that was available to it in that it allowed the defendant to represent himself, but furnished counsel. Finally, the defendant accepted the help of the lawyer who was appointed. Nevertheless, he now maintains that his Sixth Amendment right was violated because he was deprived of effective representation. In *Powell v. Alabama,* 287 U.S. 45, 71, 53 S.Ct. 55, 77 L.Ed. 158 (1932), it was held that a duty to appoint counsel under the Sixth Amendment was not discharged where the assignment was at a time and under circumstances to preclude the giving of effective aid in preparation of the trial of the case. We have held that before relief was granted on the ground of ineffective representation of counsel, it must be shown that the trial was a farce or a mockery of justice or was

10. *United States v. Irwin,* 561 F.2d 198, 200 (10th Cir. 1977), *cert. denied,* 434 U.S. 1012, 98 S.Ct. 725, 54 L.Ed.2d 755 (1978); *United States v. Smith,* Nos. 77–1864 and 77–1865 at 8 (10th Cir. May 12, 1977); *United States v. Grismore,* 546 F.2d 844, 847 (10th Cir. 1976), *cert. denied,* 435 U.S. 954, 98 S.Ct. 1586, 55 L.Ed.2d 806 (1978); *United States v. Kelley,* 539 F.2d 1199, 1202 (9th Cir.), *cert. denied,* 429 U.S. 963, 97 S.Ct. 393, 50 L.Ed.2d 332 (1976).

11. *United States v. Irwin, supra* at 200.

12. *United States v. Smith,* Nos. 77–1864 and 77–1865 at 8 (10th Cir. May 12, 1977); *Grismore, supra* at 847.

13. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

shocking to the conscience of the reviewing court.[14]

The record does not establish that Mr. Hansen was ineffective to the point that the proceedings were a farce or a mockery of justice. It is true that Mr. Hansen's preparation time was limited. The first day, however, the trial used only a short period of time in the afternoon and Mr. Hansen had overnight to complete his preparation. On the other hand, the case is not complex. The facts were simple and the law is straightforward. The appellant made a record that Mr. Hansen was not adequately prepared and that the appellant was not prepared to proceed in his own behalf. If it were not obvious that the appellant were using the counsel issue for the purpose of delay of the final outcome of these proceedings, the contention might have merit, but as it is the appellant had over a year to prepare his case or get a lawyer, but failed to do it. The appellant's predicament is not unlike that presented in *Goforth v. United States, supra.* It was there held that defendant's rights were not prejudiced by the fact that the appointment came just prior to the trial. Mr. Hansen performed with great effectiveness considering the conditions.

Finally, the idea of appointing a lay person to represent someone is completely untenable. A "lay attorney" would be preoccupied with presentation and the trial would not only be ineffective, it would also involve matters which are neither germane nor cogent.

## V.

▇▇ It is also urged that he is entitled to a court instruction on the subject of good faith as a defense. The court did not give it, but instructed the jury on the required intent necessary to constitute willful failure to file a return. The instruction given is as follows:

The specific intent of willfulness is an essential element of the crime for failure to file an income tax return. The word "willful" as used in this statute means voluntarily, purposeful, deliberate, and intentional, as distinguished from accidental, inadvertent or negligent. Mere negligence, even gross negligence, is not sufficient to constitute willfulness. You will note that the failure to act as charged in the various counts of the information is alleged to have been willful. A failure to act is willful if voluntary and purposeful, and with the specific intent to fail to do what the law requires to be done, that is to say, with the bad purpose to disobey or disregard the law. I charge you that the only bad purpose necessary for the Government to prove in this case is the deliberate intention not to file tax returns, which the defendant knew he was required to file, at the time he was required to file them.

This court considered a similar instruction in *United States v. Hoopes,* 545 F.2d 721, 723 (10th Cir. 1976), *cert. denied,* 431 U.S. 954, 97 S.Ct. 2675, 53 L.Ed.2d 270 (1977). In *Hoopes,* the court held that the above instruction was sufficient to include the idea of good faith in a prosecution for willful failure to file a return; that a separate instruction of good faith is not necessary. It might be added that such an instruction would be confusing to the jury because it would not state the law since a belief by the defendant that he is not violating the law cannot be a controlling factor. The failure to file was in open defiance of the law of the land. The fact, if it be a fact, that the defendant-appellant had good faith in terms of a clear conscience, could not be legally helpful to his cause.

In the case at bar no additional jury instructions were necessary on intent because the appellant did not present evidence capable of establishing a good faith defense based upon the Fifth Amendment privilege.

14. *United States v. Larsen,* 525 F.2d 444, 449 (10th Cir. 1975), *cert. denied,* 423 U.S. 1075, 96 S.Ct. 859, 47 L.Ed.2d 85 (1976); *Lorraine v. United States,* 444 F.2d 1, 2 (10th Cir. 1971); *Hanks v. United States,* 420 F.2d 412, 414 (10th Cir.), *cert. denied,* 398 U.S. 913, 90 S.Ct. 1712, 26 L.Ed.2d 75 (1970); *Goforth v. United States,* 314 F.2d 868, 871 (10th Cir.), *cert. denied,* 374 U.S. 812, 83 S.Ct. 1703, 10 L.Ed.2d 1035 (1963).

Moreover, it is difficult to establish good faith where the defendant has chosen not to testify. Defendant asserted the Fifth Amendment as a basis for avoiding the giving of any information. As we pointed out, this is not a valid exercise of the Fifth Amendment. The defendant was protesting what he viewed as violations of his constitutional rights. The failure to file in this spirit was in defiance of the law. Appellant complains generally that the jury instructions were improper. The instructions requested by the defendant-appellant were not proper. The instructions given were those which are recognized as valid under the law.

## VI.

■ We have considered the contention that the court erred in denying the requested bill of particulars. We conclude that this determination was a proper exercise of discretion by the trial court. It has no merit on review.

A number of additional issues have been raised which we have not discussed. We have appended a list of thirteen so-called additional issues which we deem to be without merit. Their lack of merit is obvious. The other matters which the appellant raised are even less meritorious.

We conclude that the judgment of the district court should be and it is hereby affirmed.

## APPENDIX

### ADDITIONAL ISSUES RAISED BY DEFENDANT–APPELLANT

"The additional issues were as follows:"

(1) that the defendant is not a "person" as that word is used in 26 U.S.C. § 7203 and therefore he cannot be subject to the requirements of that section,

(2) that taxation of the defendant exceeds what is permissible under the Constitution,

(3) that the defendant was the victim of entrapment because the IRS agent told the defendant that he did not have to incriminate himself by answering the agent's questions, but the defendant is being criminally prosecuted for failing to answer questions on the IRS form 1040,

(4) that the defendant's constitutional right to privacy was invaded by requiring him to answer questions on a tax return because the IRS permits access to the returns by others,

(5) that requiring a taxpayer to answer questions on form 1040 is an unreasonable search,

(6) that the entry of a "not guilty" plea by the court at the arraignment constituted a judgment of not guilty which then barred a trial,

(7) that the Internal Revenue Code is so vague, misleading, and inconsistent that it invites error and therefore cannot constitutionally be enforced,

(8) that the symbol $ is capable of such varied definitions that its use on form 1040 is designed to deceive the taxpayer and to make it impossible to sign a statement that the return is "true, correct, and complete,"

(9) that Rule 7 of the Federal Rules of Criminal Procedure required that the defendant be charged by an indictment, rather than by an information (Rule 7 requires an indictment if the offense charged may be punished by imprisonment for a term *exceeding* one year, but 26 U.S.C. § 7203 is a misdemeanor which provides that imprisonment cannot exceed one year.),

(10) that the IRS has violated the defendant's right to the free exercise of his religion (Mormon),

(11) that the defendant was not granted sufficient time to brief his case for the U.S. Court of Appeals,

(12) that there was no jurisdiction over this defendant, and

(13) that the sentence imposed (one year on each count to run concurrently, without the possibility of parole) was cruel and unusual punishment.