BENNO F. KARLIN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Karlin v. Commissioner
Docket No. 24024-83.
United States Tax Court
T.C. Memo 1987-532; 1987 Tax Ct. Memo LEXIS 524; 54 T.C.M. (CCH) 909; T.C.M. (RIA) 87532; October 19, 1987. *524 Michael J. Abramovitz, for the petitioner. Mark H. Howard, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLEN, Judge: Respondent determined deficiencies in and additions to petitioner's Federal income taxes as *525 follows: Additions to Tax
Sec.
Sec.
Sec.
Taxable Year Ended
Deficiency
6651(a) [1]
6653(a)
6654
December 31, 1977
$ 16,271.00
$  4,068.00
$   814.00
$   579.00
December 31, 1978
20,762.00
5,191.00
1,038.00
663.00
December 31, 1979
64,505.00
16,126.00
3,225.00
2,696.00
December 31, 1980
24,652.00
6,163.00
1,233.00
1,571.00
December 31, 1981
28,600.00
7,150.00
1,430.00
2,191.00
*526 Additionally, respondent motioned this Court to grant a $ 5,000 award of damages to the United States under section 6673. After concessions, [2] the issues for determination are (1) whether petitioner properly characterized $ 4,374 in payments received from Western Fidelity Life Insurance Co. during the taxable year 1980; (2) whether petitioner is entitled to a proposed farming expense deduction of $ 1,738 for the taxable year 1981; (3) whether petitioner is liable for the additions to tax determined by respondent; and (4) whether damages under section 6673 will be awarded to the United States. FINDINGS OF FACT Some of the facts of this case have been stipulated and are found accordingly. The first stipulation of facts, with attached exhibits, and the second supplemental stipulation of facts are incorporated herein by this reference. Petitioner, a farmer, resided in Hays, Kansas, at the time he filed *527 the petition in this case. Petitioner did not file any tax returns for taxable years 1977 through 1981. [3] On May 13, 1983, respondent issued a notice of deficiency to petitioner for the calendar tax years of 1977 through 1981. In determining the deficiencies for these five taxable years, respondent examined third-party sources and records. [4]
*528 Petitioner was a stockholder in Western Fidelity Life Insurance Company. [5] In 1980, petitioner received two checks totalling $ 4,374 from this insurance company. [6] During 1980 and 1981, petitioner received dividend payments from Western Fidelity in the respective amounts of $ 600 and $ 325. In 1981, petitioner wrote four checks totalling $ 1,738 to Francis Polifka ("Polifka"). [7] Petitioner stated that the checks represented amounts he paid to Polifka for fuel to be used in his farming business. [8] During the taxable years in question, petitioner purchased fuel from two vendors, Phiefer's Oil and Schriener's. Respondent allowed fuel purchase deductions from these latter two companies in the amounts of $ 3,236 in 1977, $ 3,057 in 1978, $ 4,672 in 1979, $ 4,820 in 1980, and $ 3,512 in 1981. Petitioner claimed a fuel expense deduction of $ 6,811 on his proposed 1981 return. *529 This $ 6,811 included the amount of the four checks written to Polifka. Mabel Quinto ("Quinto") was one of respondent's agents who examined petitioner's proposed tax returns for the taxable years in question. For taxable year 1981, petitioner claimed an interest deduction of $ 7,144. This interest deduction was related to a $ 23,144 payment petitioner made to Hays State Bank on February 27, 1981. Quinto's review of a copy of a bank ledger tied to the $ 23,144 payment revealed that $ 144 represented interest and $ 23,000 was principal. In addition to the interest deduction, petitioner claimed a $ 200 investment tax credit on his proposed 1981 return. The credit was related to a fuel tank petitioner purchased from Victoria Grain Company, Inc. Respondent disallowed the credit because respondent's agents had been presented with evidence that petitioner owned more than 50 percent of the outstanding stock of Victoria Grain. Petitioner provided respondent *530 a summary schedule of deductions claimed for the taxable years in question. [9] These listed amounts were compared with amounts appearing in petitioner's disbursements journal and with the actual amounts of the checks used to pay the expenditures. [10] The results of this comparison are summarized as follows: Check
Check
Disbursements
Amount claimed as
Number
Amount
Journal
a Deduction
4160
$ 139.79
$ 439.79   $   439.79    4421
165.65
165.65   465.65    4443
202.00
202.00   1,202.00    4482
33.60
33.60   333.60    4831
[11] 65.00
165.00   665.00    *531 By motion filed on June 13, 1985, respondent renewed an earlier request for the imposition of section 6673 damages. [12] After responding to this motion, petitioner's lead counsel entered a motion filed on January 13, 1986, to withdraw as counsel citing a complete breakdown of communication between petitioner and himself. This Court granted the motion to withdraw as counsel. OPINION Respondent's determination of a deficiency in tax is presumptively correct. Petitioner bears the burden of proving *532 it wrong. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a). Initially, we note petitioner maintained that respondent's repeated informal and formal requests for substantiating documentation for proposed deductions were a harassment and are a violation of his right to privacy and that the requirement to file is in all cases voluntary.[13] This Court and others have consistently and repeatedly rejected such points as being frivolous and without merit. See, e.g., Edwards v. Commissioner,680 F.2d 1268, 1270 (9th Cir. 1982); United States v. Brown,600 F.2d 248, 259 (10th Cir. 1979), cert. denied 444 U.S. 917 (1979); United States v. Carroll,567 F.2d 955, 957 (10th Cir. 1977); Coulter v. Commissioner,82 T.C. 580, 583 (1984); secs. 6011(a), 6012(a); sec. 1.6012-1(a), Income Tax Regs. As a consequence of such frivolous arguments being made, we consider suspect the testimony and credibility of taxpayers making these arguments. See McCabe v. Commissioner,780 F.2d 1027 (9th Cir. 1985), *533 affg. without opinion a Memorandum Opinion of this Court. Thus, we must closely scrutinize the testimony of petitioner, the sole witness testifying in support of his position. First, we examine the $ 4,374 in payments petitioner received from Western Fidelity Life Insurance Co. during the taxable year 1980. Petitioner proffered only his own confusing, self-serving testimony in support of his argument that such payments are a return of capital in some form. He first argued that the payments represented previously paid amounts received *534 on the termination of a credit life insurance policy that he had with Western Fidelity. He then suggested that the payments were tied to a sale of Western Fidelity stock which he owned. However, he produced no corroborating evidence supporting either view. We are not required to accept unquestioningly the confusing, self-serving testimony of petitioner. See Geiger v. Commissioner,440 F.2d 688, 689-690 (9th Cir. 1971), affg. per curiam a Memorandum Opinion of this Court; Sharwell v. Commissioner,419 F.2d 1057, 1060 (6th Cir. 1969), affg. on this issue a Memorandum Opinion of this Court; Tokarski v. Commissioner,87 T.C. 74, 77 (1986). In the absence of corroborating evidence that the amounts received from Western Fidelity represent a return of capital to petitioner in whole or in part, we determine that the full $ 4,374 payment received in 1980 is income on which petitioner must pay tax. Cf. sec. 61; Commissioner v. Glenshaw Glass Co.,348 U.S. 426 (1955). Second, we focus on the amounts paid to Polifka in 1981. *535 Petitioner claimed that the $ 1,738 paid to Polifka represented amounts paid for fuel to be used in his farming business. Associated with this claim, petitioner introduced as evidence one of the four checks written to Polifka. This check, numbered 4831, had an annotation in the lower, left-hand corner which stated that the check was for fuel. Petitioner also explained his proposed, high fuel expense for 1981, of which the Polifka purchase would have been a part, by testifying that he at times would fill his fuel tank at year's end if the price of fuel was low. [14]
*536 The law is well settled that tax deductions are a matter of legislative grace. New Colonial Ice Co. v. Helvering,292 U.S. 435, 440 (1934). Petitioner bears the burden of proving entitlement to the claimed deductions. Welch v. Helvering,290 U.S. at 115; Rule 142(a). We hold that petitioner has not carried his burden of proof, and we, consequently, deny his claim for a deduction based on these payments to Polifka. In support of his self-serving testimony, petitioner presented only one of the four checks delivered to Polifka -- check number 4831. The corroborative value of this single check, however, is lessened because this check had in fact been altered between the time the check was processed by the bank and the time that petitioner claimed the check's amount as a deduction on his proposed 1981 tax return. Additionally, petitioner presented no evidence as to his habit of properly labelling the purpose for which he wrote checks. We are not persuaded by such questionable documentation. In addition to the evidentiary deficiencies, Polifka's conspicuous *537 absence from the witness stand and a failure on petitioner's part to explain this absence weigh heavily against petitioner. As we said in Pollack v. Commissioner,47 T.C. 92, 108 (1966), affd. 392 F.2d 409 (5th Cir. 1968), "The burden of proof [is] upon petitioners and we cannot assume that the testimony of a critical absentee witness would have been favorable * * *. Indeed, the normal inference is that it would have been unfavorable." See also Tokarski v. Commissioner,87 T.C. at 77; Bresler v. Commissioner,65 T.C. 182, 188 (1975); Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Petitioner argues, nevertheless, that the rule of Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), allows this Court to grant petitioner a deduction for fuel expenses in 1981 tied to the $ 1,738 paid to Polifka. Based on respondent's allowed fuel deductions for the years 1977 through 1980, [15] petitioner mathematically determined *538 through linear regression analysis that the best straight-line projection for petitioner's fuel costs for 1981 should approximate $ 5,586. Petitioner then noted that this projected amount was greater than the $ 5,250 amount -- $ 3,512 allowed by respondent plus $ 1,738 additionally paid to Polifka -- he was now claiming in his brief for the tax year in question.[16] Consequently, he argued he should be allowed the $ 5,250 deduction in full. In discussing the applicability of the Cohan rule, we note our statement in Stemkowski v. Commissioner,82 T.C. 854, 867 (1984): There are literally thousands of cases in which the Court has applied the Cohan rule or refused to apply it. Its application depends upon the facts and circumstances of individual *539 cases. * * * [The rule's application] is not automatic, and the taxpayer must come within its rationale to benefit from its application. * * * In Cohan, the taxpayer had in fact spent substantial sums on travel and entertainment expenses; however, the Cohan taxpayer had kept no account of these expenses and "probably could not have done so." Cohan v. Commissioner,39 F.2d at 543. In admonishing the Board of Tax Appeals for fully disallowing any deduction tied to these expenses, the Court of Appeals for the Second Circuit established the parameters of the Cohan rule thusly: The question is how far this refusal is justified, in view of the finding that [the Cohan taxpayer] had spent much and that the sums were allowable expenses. Absolute certainty in such matters is usually impossible and it not necessary; the Board should make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making. But to allow nothing at all appears to us inconsistent with saying that something was spent. * *540 * * [Cohan v. Commissioner,39 F.2d at 543-544.] As this initial statement of the Cohan rule makes clear, the rule applies in those instances where the taxpayer has shown that he is entitled to an allowable expense whose exact amount is indeterminate or not fully substantiated. When the rule applies, the Court then looks to the record to find sufficient evidence on which it can base its estimate of an allowable expense amount. Where, however, the record provides no evidence of an allocable amount, the deduction must be disallowed. Professional Services v. Commissioner,79 T.C. 888, 919-920 (1982); Luman v. Commissioner,79 T.C. 846, 859 (1982); Epp v. Commissioner,78 T.C. 801, 807 (1982). The record in this case shows that petitioner has spent sums on allowable fuel expenses in 1981. Pursuant to the Cohan rule, however, we find that the record's evidence sufficiently supports a proper allocation of fuel expenses in 1981 of only $ 3,512 -- the amounts paid to Phiefer's Oil and Schriener's. None of the amounts tied to payments to Polifka in 1981 are allowed as deductible fuel expenses because *541 the record does not sufficiently establish that any such amounts were actually tied to fuel expenses. In reaching this allocation and deciding to allow petitioner a fuel expense deduction no greater than that for which corroborating evidence is available, we note the language of Cohan which permits us to bear "heavily if [we choose] upon the taxpayer whose inexactitude is of his own making." Cohan v. Commissioner,39 F.2d at 543. The Cohan rule does not apply as a ramrod to allocate to taxpayers expense deductions in excess of those amounts for which sufficient, corroborating evidence exists where the taxpayer neither presents easily-obtainable corroborating evidence which would justify a higher allocation nor proffers an explanation for such evidence's nonpresentation. [17]
*542 Respondent determined additions to tax under sections 6651(a), 6653(a), and 6654 for the taxable years 1977 through 1981. The burden of proof is on petitioner to establish that he is not liable for these additions to tax. Neubecker v. Commissioner,65 T.C. 577, 586 (1975); Enoch v. Commissioner,57 T.C. 781, 802 (1972); Baldwin v. Commissioner,84 T.C. 859, 871 (1985). Section 6651(a) imposes an addition to tax not exceeding 25 percent in the aggregate in the case of failure to file returns, unless it is shown that such failure is due to reasonable cause and not due to willful neglect. Petitioner presented no evidence to meet his burden of proof. The addition to tax under section 6651(a) is sustained. See Cupp v. Commissioner,65 T.C. 68 (1975), affd. in an unpublished opinion 559 F.2d 1207 (3d Cir. 1977); Jarvis v. Commissioner,78 T.C. 646 (1982). *543 Section 6653(a) provides for additions to tax if any part of the underpayment is due to negligence or an intentional disregard of rules or regulations. Under section 6653(a), negligence is a lack of due care or a failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner,85 T.C. 934, 947 (1985). Petitioner has failed to introduce any evidence to carry his burden of proof. Moreover, considering the evidence before us, we find that petitioner has intentionally disregarded rules and regulations of the Internal Revenue Code and has been negligent. The addition to tax under section 6653(a) is sustained. Respondent also determined an addition to tax under section 6654(a) for underpayment of estimated tax. Once a deficiency has been established, section 6654(a) is mandatory unless petitioner can bring himself within certain exceptions not here applicable. Grosshandler v. Commissioner,75 T.C. 1, 20-21 (1980). Accordingly, the addition to tax *544 under section 6654(a) is sustained. On the basis of the record before us, we hold that petitioner has failed to carry his burden of proving respondent's deficiencies and additions to tax to be in error. [18] Accordingly, we sustain respondent's determinations in light of the concessions made. *545 In conclusion, we turn to the imposition of damages pursuant to section 6673. Under this section, this Court may award damages to the United States in an amount not to exceed $ 5,000 if it appears to this Court that proceedings instituted or maintained by the taxpayer have been primarily for delay or if the taxpayer's position in such proceedings is frivolous or groundless. In the case at hand, petitioner maintained throughout both trials that the filing of a return is in all instances voluntary and that responent's repeated attempts, both informal and formal, to obtain discoverable information from which tax returns could be prepared were a harassment and an infringement of his right to privacy. [19] That these maintained positions are frivolous is clear. See Edwards v. Commissioner,680 F.2d at 1270; United States v. Brown,600 F.2d at 259; United States v. Carroll,567 F.2d at 957; Coulter v. Commissioner,82 T.C. at 583; *546 secs. 6011(a), 6012(a); sec. 1.6012-1(a), Income Tax Regs.
In addition we note that petitioner obstinately maintained these frivolous positions even after this Court had told him in his first trial that his continued reliance on such positions was misplaced. This obstinacy impresses us not only that petitioner was raising frivolous positions but also that he maintained this proceeding primarily for delay. See Greenberg v. Commissioner,73 T.C. 806, 813-816 (1980); Wilkinson v. Commissioner,71 T.C. 633, 642-643 (1979). *547 Petitioner's confusing, self-serving testimony, his reliance on altered and uncorroborated evidence in support of claimed deductions, and his stubborn refusal to cooperate reasonably with respondent, his own attorney, and the directives of this Court to produce substantiating evidence are all facts which this Court must consider in deciding whether petitioner has attempted to delay his day of reckoning. [20]
Based on our consideration of the entire record, we are left with the inescapable conclusion that petitioner twice maintained a frivolous and uncooperative stance in this Court and that he did so primarily for delay. We will not allow taxpayers to take refuge in this Court purely to prolong the period before which they must pay their deficiencies. Our docket does not allow us to waste time with petitioners who maintain stale tax protestor cliches when we have waiting other petitioners who have come to this Court with genuine controversies. *548 Cf. Abrams v. Commissioner,82 T.C. 403, 408-413 (1984). Accordingly, we award damages of $ 5,000 to the United States under section 6673. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable years in issue. All rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. In the Second Stipulation of Facts, filed June 4, 1985, the parties agreed to a number of income items and deductions which affect petitioner's tax liability, as determined in the notice of deficiency. As a result, a Rule 155 computation will be necessary in this case. ↩
3. Petitioner has filed returns for taxable years prior to 1977. ↩
4. This case was originally set for trial on October 1, 1984. On this trial date petitioner, appearing on his own behalf, was unprepared to prosecute his case. Because of petitioner's unpreparedness, the Court dismissed the case and ordered petitioner to pay the determined deficiencies. The Court also rebuked petitioner for his questioning his need to file a return and for his reliance on his right to privacy as a bulwark against his obligation to disclose information concerning his income and deductions and told petitioner he needed to produce evidence going to any income and deductions he may have had. The Court then explained that it would set aside this dismissal, pursuant to Rule 162, if petitioner found someone qualified to handle the case, if petitioner agreed to turn over all supporting evidence to this qualified individual, and if this individual properly filed a motion asking the Court to set aside its dismissal decision. Soon after this dismissal, petitioner hired counsel who promptly filed a motion asking the Court to set aside the dismissal order. On receiving this timely motion, the Court vacated its earlier Order or Dismissal and rescheduled petitioner's case for trial in June of 1985. Petitioner gave respondent proposed tax returns for the taxable years 1977 through 1981 in April of 1985. However, these returns were unaccompanied by any supporting documentation. Between May 22, 1985, and the day of his second trial, petitioner haphazardly provided only insubstantial supporting documentation for his proposed returns. Considering our determinations and holdings in this case, we observe that we may have been overly accommodating to petitioner, whose generally obstructive tax protestor tactics clearly prevented an administrative disposition of this case. Henceforth, petitioner and those like him are admonished that considering the burden of this Court's caseload and the drought of resources available to this Court, we cannot afford to indulge such petulant proceedings. ↩
5. Petitioner had originally purchased shares of stock in the company for about $ 2,000. His wife had additionally purchased about $ 1,000 worth of stock. Petitioner, however, did not know the number of shares he or his wife had purchased. ↩
6. One check was for $ 2,478, the other was for $ 1,896. ↩
7. The checks were for $ 65, $ 854, $ 219, and $ 600. ↩
8. The city directory for Hays, Kansas, listed Polifka's occupation as an automotive and industrial machine shopkeeper and not as a bulk distributor of fuel products. ↩
9. The schedules were prepared by petitioner's daughter and were based on information supplied by petitioner. Petitioner's daughter was not a bookkeeper. ↩
10. The actual amount paid by check is reflected by the bank coding found in the lower right corner of each processed check. ↩
11. The face amount of this check had also been altered at some point after the Hays State Bank had processed the check. The bank coding at the lower, right-hand corner of the check showed that the check had been processed at $ 65.00. However, both the numerical and written amounts of the check had been altered from $ 65.00 to $ 165.00. Additionally, in the lower, left-hand corner of the check the word "fuel" had been penned as an annotation of the purpose for which the check had been written. ↩
12. On April 23, 1985, respondent motioned the Court to impose damages pursuant to sec. 6673. This motion was in response to petitioner's recalcitrance in delivering supporting documentation for the proposed tax returns. At the start of the June 4th trial respondent requested a hearing on his motion for the imposition of sec. 6673 damages. The Court decided not to grant respondent's sec. 6673↩ motion at that time but suggested that respondent's renew this motion after the trial. Also, the Court stated that respondent could present evidence during the trial in support of this motion. 13. In his petition filed on August 12, 1983, petitioner alleged that, "These adjustments [to income in the deficiency notice] were made without [his] consultation and constitute a harassment." On November 16, 1983, petitioner amended this August 12th petition but continued to claim that the adjustments were a harassment. At his second trial, petitioner was asked why he did not provide respondent with his books and records for the years 1977 through 1981. Petitioner answered that he had been harassed terribly and that disclosure violated his right to privacy. He also stated that he had read that the filing of a return was voluntary. ↩
14. Petitioner claimed $ 6,811 as a fuel expense deduction on his proposed 1981 tax return. When asked to explain why his proposed fuel expense for 1981 was so much higher than his proposed fuel expenses for previous tax years, petitioner mentioned that at times he purchased fuel at the end of the year to fill his fuel tank. The unused amount of this purchased fuel would then be carried over to and used in the following year. Petitioner added that he tried to make his year-end purchases in years when the cost of fuel was low. However, when asked specifically whether he made such a year-end purchase in 1981, petitioner was unequivocal in his response. Remembering that we must carefully consider petitioner's testimony, we will not read his equivocalness on this point as a validation of his claim that the amounts paid to Polifka represented deductible fuel purchases tied to a year-end purchase. Moreover, a check of the U.S. Department of Energy's Monthly Energy Review revealed that, for the tax years in question, crude oil refiner acquisition costs, a gauge of ultimate fuel costs in the consumer market, were at their highest level in 1981. This high cost detracts from petitioner's statement that the amounts paid to Polifka represented additional fuel purchases in a year when the price of fuel was low. ↩
15. Respondent allowed deductions for fuel expenses in the following amounts: 1977 -- $ 3,236; 1978 -- $ 3,057; 1979 -- $ 4,672; and 1980 -- $ 4,820. Respondent allowed a deduction of $ 3,512 for fuel expenses in 1981. ↩
16. On his proposed tax return for 1981 petitioner had initially claimed $ 6,811 in fuel expenses. ↩
17. Petitioner based his linear regression analysis on an extremely small sample. This sample's small size renders the results of any regression analysis based on this sample subject to question. See generally Allen L. Edwards, An Introduction to Linear Regression and Correlation 38 (1984). In this instance, to allow an estimated fuel expense for 1981 based on linear regression analysis would be to allow a deduction under the Cohan rule based on nothing but "unguided largesse." Cf. Williams v. United States,245 F.2d 559, 560 (5th Cir. 1957); Epp v. Commissioner,78 T.C. 801, 807↩ (1982). Furthermore, petitioner first raised this analysis on brief. Such an analysis is only an ex parte statement and does not constitute evidence. Rule 143(b). 18. In his notice of deficiency, respondent included amounts tied to petitioner's liability for self-employment taxes for the taxable years 1977 through 1981. Petitioner has the burden of proving that he is not liable for self-employment taxes. Rule 142(a); Welch v. Helvering,290 U.S. 111, 115 (1933); Rockwell v. Commissioner,512 F.2d 882, 886 (9th Cir. 1975), affg. a Memorandum Opinion of this Court. Petitioner never argued that he is not liable for this tax. With regard to the $ 7,144 interest deduction, which related to a $ 23,144 payment petitioner made to Hays State Bank in 1981, we again note that petitioner never presented evidence controverting respondent's claim that the bank ledger reflecting this $ 23,144 payment divided the total payment between $ 23,000 of principal and $ 144 of interest. Petitioner grossly overstated this proposed interest deduction; and we limit petitioner's 1981 interest deduction tied to the $ 23,144 payment to $ 144. Finally, respondent also disallowed the proposed $ 200 investment tax credit claimed by petitioner in 1981 for a fuel tank he purchased from Victoria Grain Company. Petitioner never presented evidence controverting respondent's claim that petitioner owned more than 50 percent in value of the outstanding stock of Victoria Grain. This lack iof controverting evidence forces us to decide that the fuel tank did not qualify as "used section 38 property" for which petitioner could claim an investment tax credit. Petitioner's failure to present evidence as to these issues and our consideration of the record as a whole lead us to the conclusion that petitioner has not satisfied his burden of proof as to these issues. Respondent's determinations as to these issues are sustained. ↩
19. An examination of questions asked by respondent in interrogatories sent to petitioner and of documents respondent wished petitioner to produce reveals that the questions and documents dealt with relevant and discoverable matters. Additionally, the record in this case shows nothing in the questions asked, or the demand for production of records, which might be an undue infringement of petitioner's privacy or dangerous because injurious disclosure would result. Cf. United States v. Carroll,567 F.2d 955, 957 (10th Cir. 1977); Hoffman v. United States,341 U.S. 479, 487↩ (1951). 20. Cf. Snodgrass v. Commissioner,T.C. Memo. 1984-435; McInnes v. Commissioner,T.C. Memo. 1984-88↩.