**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Kenneth V. STILLHAMMER and
Laverne B. Stillhammer,
Defendants-Appellants.**

**Nos. 81–2139, 81–2140.**

United States Court of Appeals,
Tenth Circuit.

May 5, 1983.

Kenneth V. Stillhammer, pro se.

Lynn Allan and Frank O. Westerfield, Jr., Albuquerque, N.M., on briefs, for defendants-appellants.

Wayne G. Chew, Asst. U.S. Atty., Albuquerque, N.M. (William L. Lutz, U.S. Atty., Albuquerque, N.M., on brief), for plaintiff-appellee.

Before HOLLOWAY, McWILLIAMS and BARRETT, Circuit Judges.

HOLLOWAY, Circuit Judge.

This is a direct appeal by defendants, husband and wife, who were each convicted on four counts (Counts I through IV) of failure to file income tax returns under 26 U.S.C. § 7203 and one count of filing a false or fraudulent withholding exemption certificate (Form W–4), in violation of 26 U.S.C. § 7205. Count V charged Laverne Stillhammer with the latter offense; Count VI similarly charged Kenneth Stillhammer. The first four counts covered the tax years 1976 through 1979. The charges under § 7205 alleged submission of false certificates in 1978 for use in that year.

Defendants were found guilty after a three day jury trial. Laverne Stillhammer was sentenced to imprisonment of one year and a fine of $2,000 on each of Counts I–IV; the confinement was suspended and she was placed on three years' probation. On Count V she was also sentenced to one year of imprisonment, with that sentence also suspended. Kenneth Stillhammer was sentenced to one year's confinement on each of Counts I–IV, with the sentences to be served concurrently. He was sentenced to three years' probation on Count VI, to begin after completion of the one year of imprisonment. He was also fined $2,000 on each of the first four counts and $500 on the conviction on Count VI.

## I

At this point after verdicts of guilty, we must view the record in the light most favorable to the Government. Considered in this way the Government's evidence showed that both defendants were employed during the relevant years and earned incomes exceeding the minimum amounts necessary to impose the duty to file income tax returns. Tax returns and withholding certificates from previous years were introduced in evidence to show that defendants understood the requirements of the law.

The purported returns for the years 1976 through 1979 contained the defendants' names and address, their Social Security numbers, and their signatures. No other information was given; on most other blanks defendants had entered comments indicating their intention to claim a Fifth Amendment privilege not to give incrimina-

ting information. Both defendants filed withholding certificates in 1978 stating that they had incurred no tax liability in 1977 and anticipated none in 1978.

## II

Defendants' first contention is that the district court abused its discretion in striking a prospective juror for cause. In response to a general question about preexisting attitudes, one venireman entered into the following colloquy with the judge:

> THE COURT: Do any of you have any strong feelings concerning the tax laws of the United States? I guess it depends on the time of year whether you have them or not. Do you have any feelings in favor of or against the Defendants because of the nature of the accusation here or for any other reason? Do you have any opinion that the offenses with which the Defendants are charged should be pursued with extraordinary vigor or that the offenses should not be an offense?
>
> If you were the United States attorney prosecuting this case, do you know of any reason why you would not want to have the case tried by someone in your frame of your (sic) mind? If you were the defendant on trial here today, or the defense attorney, do you know of any reason why you would not want to have the case tried by someone in your frame of mind? Would you be unwilling to return a verdict based solely—excuse me. Yes, sir?
>
> A JUROR: Your Honor, my own personal beliefs are that in some circumstances—I'm not talking about legally, but I think in some circumstances I would believe that withholding of a certain proportion of one's taxes as conscientious objection or civil disobedience would be, for me, morally justified. It would depend on the reasons why.
>
> THE COURT: You would want to hear the facts before you made a decision?
>
> A JUROR: Well, I'm not sure that in the process of hearing the facts, my feelings might be quite strongly one way or the other.
>
> THE COURT: Do you have any feeling that that would color your opinion in this particular action?
>
> A JUROR: Quite possibly.
>
> THE COURT: You would have reservations until you heard all of the testimony, that you are not sure whether you would be in favor or against?
>
> THE JUROR: That's correct.

II R. 18–19. The district judge subsequently struck this juror for cause on the Government's challenge.

Defendants' argument that this ruling was an abuse of discretion is unsound. The contention is based on the distinction, drawn by some courts, between actual and implied bias. Defendants assert that the responses quoted above are insufficient to show actual bias; further, they contend that bias should not have been implied, basing this portion of their argument solely on the general principle of law, not shown to be relevant to this issue, that bias or prejudice ordinarily should not be inferred but shown directly.

Defendants do not dispute that this is a matter committed to the trial court's discretion. *See e.g., United States v. Redmond,* 546 F.2d 1386, 1389 (10th Cir.1977); *United States v. Porth,* 426 F.2d 519, 523 (10th Cir.), *cert. denied,* 400 U.S. 824, 91 S.Ct. 47, 27 L.Ed.2d 53 (1970). Defendants clearly fail to show any abuse of discretion in the trial judge's ruling. Defendants do not even assert that the jury was not impartial, nor do we see how such an assertion could fairly be made on the basis of this record. This is the proper point for application of the rule cited by defendants that prejudice will not be inferred. There was no abuse of discretion in this ruling.

## III

In the course of their investigations, I.R.S. agents prepared forms which calculated the defendants' tax liabilities for the years 1976, 1977, and 1978. Defendants attempted to introduce these papers in evidence to show that the Service had ade-

quate information to assess the amount of tax owed by the Stillhammers. The district judge ruled this evidence inadmissible. The Stillhammers now make two related arguments regarding these calculations. First, they claim that the court erred in excluding the documents. Second, they argue that the forms 1040 filed by them did constitute tax returns so that they should not have been convicted on the first four counts. This second contention is based on the fact that the Government did indeed acquire sufficient information to assess the tax liability. Because these points are related, we address them together.

The flaw in defendants' argument is readily apparent from the very authorities on which they rely. Defendants maintain that the issue in determining whether proper returns have been filed is whether the Service has the necessary information from which to calculate the tax. This assertion implies that the source of the information is not material. The defendants' brief cites the following quotation, a statement which itself refutes their argument: "The acid test for determining whether a document constitutes a valid tax return is whether *it* contains sufficient data from which [the I.R.S.] can compute and assess a tax liability." *White v. C.I.R.,* 72 T.C. 1126, 1129 (1979) (emphasis added). Thus the test is whether the defendants' returns themselves furnished the required information for the I.R.S. to make the computation and assessment, not whether the information was available elsewhere.

The forms filed by the Stillhammers contained no information about income or deductions. The record is clear that the tax calculations in question were prepared only after I.R.S. agents obtained copies of defendants' W–2 forms from their employers. We often have held that purported returns which do not contain information from which the I.R.S. can assess the taxpayer's tax liability are not returns within the meaning of the Internal Revenue Code or the tax regulations. *See, e.g., United States v. Lawson,* 670 F.2d 923, 927 (10th Cir.1982); *United States v. Brown,* 600 F.2d 248, 251 (10th Cir.), *cert. denied,* 444 U.S.

917, 100 S.Ct. 233, 62 L.Ed.2d 172 (1979); *see also* cases cited in *Brown,* 600 F.2d at 251 n. 1.

Thus it is clear that there is no merit to defendants' contention that they filed returns which were adequate to preclude guilt under § 7203. It also follows that the trial court did not err in excluding the I.R.S. calculations. What defendants sought to establish through this evidence simply is no defense to the charges. Therefore, the proffered documents were not shown to have any relevance to the case. Rules 401 and 402, Federal Rules of Evidence.

IV

The arguments considered thus far are all contentions made in the briefs filed by defendants' counsel. Further issues have been presented in a *pro se* brief accepted by the court as supplemental authority. The defendants devote most of their effort in their *pro se* supplemental brief to arguing that the intent of the draftsmen of the Sixteenth Amendment to the United States Constitution was to authorize the taxation of the income of corporations and other business organizations, and not that of individuals. Before turning to that argument we will briefly address the other points made in the *pro se* brief.

First, defendants argue that no offense under § 7203 was committed because they did file returns. This is, of course, merely a restatement of the argument considered and rejected in Part III, *supra.* The purported returns filed were not valid returns and their filing did not comply with the law.

Second, defendants contend that no offense was committed under § 7205 because they were merely following the W–4 form's instructions in swearing that they had incurred no tax liability in 1977 and anticipated none in 1978. The argument is disingenuous and untenable. Defendants clearly were aware of their duty to file returns and knew that their income would be such as to

subject them to tax liability in 1978.[1] That they anticipated again filing a "Fifth Amendment return," leaving the amount of their tax liability uncertain until after I.R.S. action, cannot be equated with a good faith belief that there would be no tax liability.

■ Third, the defendants assert a Fifth Amendment privilege to file returns as they did. This argument has also been rejected repeatedly by this court. The Fifth Amendment does not serve as a defense for failing to make any tax return, and a return containing no information but a general objection based on the Fifth Amendment does not constitute a return as required by the Code. *United States v. Moore,* 692 F.2d 95, 97 (10th Cir.1979); *United States v. Lawson,* 670 F.2d 923, 927 (10th Cir.1982); *United States v. Brown,* 600 F.2d 248, 251–52 (10th Cir.), *cert. denied,* 444 U.S. 917, 100 S.Ct. 233, 62 L.Ed.2d 172 (1979). Such a general objection under the Fifth Amendment as defendants asserted on their returns is not a valid claim of the constitutional privilege which must be made as to specific items of information. *Moore,* 692 F.2d at 97; *United States v. Irwin,* 561 F.2d 198, 201 (10th Cir.1977), *cert. denied,* 434 U.S. 1012, 98 S.Ct. 725, 54 L.Ed.2d 755 (1978).[2] These cases all follow the principles laid down by the Supreme Court in

1. As previously noted, through introduction of defendants' tax returns for earlier years it was shown that defendants were aware of the duty to file returns and of the fact that their income in those years was sufficient to incur tax liability. III R. 242–245. In 1977 Mr. Stillhammer received $17,125.92 in wages from one employer; in 1978 he received $19,117.69 from one employer. III R. 240. For those same years Mrs. Stillhammer had earnings of $9,058.00 and $10,440.68, respectively. II R. 52.

2. The defendants' joint federal individual income tax returns for the calendar years 1976, 1977, 1978 and 1979 were introduced in evidence. From our examination of them we are satisfied that they do not make a proper Fifth Amendment claim to the protection of the privilege against self-incrimination, in accord with the decisions cited in the text, and particularly *United States v. Irwin,* 561 F.2d 198, 200–201.

For 1976, the defendants filed two returns. Government Exhibit 18A was a Form 1040A dated September 6, 1977, which stated the names, address and occupations of the defendants and claimed two exemptions. A refund was claimed on line 24 for $2,782.31. On line 9, in response to the question calling for wages, salaries, tips and other employee compensation, the defendants stated "Object: Self incrimination." The objection was stated on line 10a and 11 and repeatedly on the following lines of the Form 1040A. On line 20a it was stated that total Federal income tax withheld was $2,782.31, which was repeated on other lines. The figure of $70.00 also appeared on line 17a and 17c for exemptions ($35.00 times two).

A second 1976 return was also filed by defendants on Form 1040, dated December 30, 1977 (Government Exhibit 18B). The return stated the defendants' names and Social Security numbers and occupations. Then commencing with the lines dealing with the taxpayers' filing status and dependents, the response was repeatedly "Object." The same response, "Object," was entered throughout both pages of the Form 1040. On line 23a defendants did state that total federal income tax withheld was $2,782.31 and that the amount overpaid was $2,782.31. Attached to this Form 1040 were lengthy exhibits, including an explanation that where the word "Object" appeared, the defendants were claiming in good faith a right to decline to furnish information on grounds of the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Thirteenth, Fourteenth, and Sixteenth Amendments and all other rights under the Constitution, such as equal treatment under the law, *inter alia.*

For 1977, defendants filed a joint Form 1040 dated December 22, 1978 (Government Exhibit 19). It followed closely the Form 1040 filed for 1976. The names of the taxpayers were both stated and then commencing with the line for the Social Security numbers, the word "Object" was entered repeatedly throughout as an answer to questions on the first and second pages of the form. This included a response, "Object," to line 8 inquiring as to wages, salaries, tips and other compensation. Again attached to this Form 1040 for 1977 there were numerous exhibits. They included the same explanation of the use of the word "Object," namely that they were claiming their rights under the First Amendment and all the other amendments cited in the preceding paragraph.

For 1978, the defendants filed a joint Form 1040 return dated December 29, 1979 (Government Exhibit 20). It again stated the names of the taxpayers, that it was a joint return by married parties, and then it answered the question on the Social Security numbers "object 5th amend." Similar answers were given repeatedly to questions down both pages of the Form 1040, including the inquiry as to wages, salaries, tips and other employee compensation. On this form the line concerning possible overpayment and refund had a response "object."

Garner v. United States, 424 U.S. 648, 650, 96 S.Ct. 1178, 1180, 47 L.Ed.2d 370 (1976), and *United States v. Sullivan,* 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037 (1927).

Finally we consider the argument, made at some length in the *pro se* brief and repeated at oral argument, that the income tax statutes cannot be construed to apply to defendants because Congress intended the Sixteenth Amendment to authorize taxation of the income of business enterprises only. Lengthy portions of legislative history are quoted in which taxation of corporations, insurance companies, and other organizations is discussed.

Such a limited purpose of taxing only such business organizations is not apparent from the language of the Amendment. Its text, in full, is this: "The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration."

Following ratification of the Sixteenth Amendment, the Supreme Court observed that the Amendment granted no new power to Congress, but merely freed it to exercise the taxing power granted in Article I, Section 8, in taxing income without the restriction of apportioning the tax among the states, and without regard to any census or enumeration, a condition placed on direct taxes by Article I, Section 9. *Brushaber v. Union Pacific R.R.,* 240 U.S. 1, 17–19, 36 S.Ct. 236, 241–42, 60 L.Ed. 493 (1916). Prior to the ratification of the Amendment, an income tax act had been held partially invalid because of the Article I conditions, based on a finding that the tax was a direct tax as applied to income, such as rents, derived from real property. *Pollock v. Farmers' Loan & Trust Co.,* 157 U.S. 429, 15 S.Ct. 673, 39 L.Ed. 759 (1895). It is unnecessary to delve into the difficult question of the distinction between direct and indirect taxes because even a cursory study of these early cases teaches that the power of Congress to impose an income tax on salaries and wages has never been seriously doubted. In *Pollock* the Court stated:

[T]he power of Congress to tax is a very extensive power. It is given in the Constitution, with only one exception and only two qualifications. Congress cannot tax exports, and it must impose direct taxes by the rule of apportionment, and indirect taxes by the rule of uniformity. Thus limited, and thus only, it reaches every subject, and may be exercised at discretion.

157 U.S. at 557, 15 S.Ct. at 680 (quoting *The License Tax Cases,* 72 U.S. (5 Wall.) 462, 471, 18 L.Ed. 497 (1866)). Thus, prior to ratification of the Sixteenth Amendment Congress could tax the earnings of individuals. The Amendment was passed to overrule *Pollock (see Brushaber,* 240 U.S. at 18, 36 S.Ct. at 241–42) and to remove the apportionment limitation with respect to the laying and collection of taxes on income. "Congressional power to tax rests in Article 1, Section 8, clause 1 of the Constitution and embraces all conceivable powers of taxation including the power to lay and collect income taxes." *United States v. Lawson,* 670 F.2d at 927. It is thus too late to argue that the Amendment did not permit taxation of the income of individuals. *See Eisner v. Macomber,* 252 U.S. 189, 207, 40 S.Ct. 189, 193, 64 L.Ed. 521 (1920) ("income," as

---

Attached to this Form 1040 were several pages of legal discussion in support of the defendants' position on claiming the privilege against self-incrimination, citing *Garner v. United States,* 424 U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370.

For 1979, defendants again filed a Form 1040 joint return with the repeated Fifth Amendment objection as a response (Government Exhibit 21). The defendants responded to the question on their Social Security numbers "Object 5th Amendment," and a similar objection was entered line after line throughout the return. The objection was thus made to the question on wages, salaries, tips and other employee compensation, to other questions on income and deductions, and the objection was also made on the lines concerning overpayment and refund. Again the return was accompanied by legal arguments and authorities on the Fifth Amendment.

From our examination of these returns we are satisfied that they come within the ruling of the *Irwin* case where the taxpayer similarly answered all questions dealing with Irwin's income with the entry "Object-Self-incrimination." 561 F.2d at 200.

used in the Sixteenth Amendment, includes "gain derived from capital, from labor, or from both combined," quoting *Doyle v. Mitchell Bros. Co.,* 247 U.S. 179, 185, 38 S.Ct. 467, 469, 62 L.Ed. 1054, provided it be understood to include profit gained through a sale or conversion of capital assets); *Metcalf & Eddy v. Mitchell,* 269 U.S. 514, 46 S.Ct. 172, 70 L.Ed. 384 (1926) (constitutionality of taxation of income of a private contractor with a state upheld against a challenge to the constitutional power of Congress to tax instrumentalities of a state government). We feel it is clearly implicit in these decisions that Congress has the power to tax the income of individuals.

### V

In sum, no error has been demonstrated in the trial of the case or in the rulings made. Accordingly the judgments are

AFFIRMED.