DUANE L. GALLENTINE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gallentine v. Commissioner
Docket No. 7926-90
United States Tax Court
T.C. Memo 1992-14; 1992 Tax Ct. Memo LEXIS 19; 63 T.C.M. (CCH) 1747; T.C.M. (RIA) 92014; January 8, 1992, Filed *19 Decision will be entered under Rule 155. Duane L. Gallentine, pro se. Michael A. Urbanos, for respondent. COHEN, Judge. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies of $ 9,706 and $ 7,097 in petitioner's Federal income taxes for 1982 and 1983, respectively, and additions to tax for fraud under section 6653(b)(1) and (2) and for underpayment of estimated tax under section 6654 for each year. In the answer, respondent alleged, in the alternative, that petitioner was liable for additions to tax under section 6651(a)(1) for failure to file returns and under section 6653(a)(1) and (2) for negligence. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. After concessions, the issues for decision are whether petitioner is entitled to charitable contribution deductions beyond those allowed by respondent and whether petitioner is liable for the additions to tax for fraud. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated herein by this reference. *20 Petitioner was a resident of Wisconsin at the time his petition was filed. During the years in issue, petitioner was a rate auditor for Yellow Freight Systems, Inc. He received wage income from his employer in the amounts of $ 27,866 for 1982 and $ 27,794 for 1983. During 1982, petitioner also received a taxable distribution of $ 4,070 from his employer's profit-sharing plan, interest income, and a State tax refund. Petitioner also received interest income in 1983. In 1982, petitioner ceased to use bank accounts and began conducting his affairs in cash. Petitioner's purpose in conducting his affairs in cash was to avoid seizure of his assets by the Internal Revenue Service. Petitioner posted a sign on his residence containing threatening language directed at Federal Government agents, including Internal Revenue Service agents, in an attempt to intimidate them. Petitioner was aware of his obligation to file timely Federal income tax returns. Petitioner filed timely Federal income tax returns on Forms 1040 for the years 1977 through 1981, inclusive. On those returns, petitioner reported wages received for his work as a rate auditor or a rate clerk. During 1981, petitioner *21 signed and submitted to his employer a Form W-4 withholding certificate, claiming four withholding allowances. During 1982 and 1983, petitioner was entitled to personal and dependent withholding allowances for himself and for his two children. (His wife filed a separate Federal income tax return for those years.) The itemized deductions to which petitioner was entitled were approximately $ 5,100 for 1982 and $ 5,400 for 1983. Petitioner was entitled to only three withholding allowances during 1982 and 1983. In 1982, petitioner knowingly signed and submitted to his employer a false Form W-4 withholding certificate, claiming entitlement to 13 withholding allowances. Federal income tax was withheld from petitioner's wages in the amounts of $ 2,380 in 1982 and $ 1,829 in 1983. On or about April 15, 1983, and on or about April 15, 1984, petitioner submitted to the Internal Revenue Service Forms 1040 for 1982 and 1983, respectively, on which he placed the word "object" on the lines on which he was to report (1) wages, salaries, tips, etc., (2) capital gain or loss, (3) other income, (4) total income, and (5) adjusted gross income. Petitioner reported the State tax refund that he *22 received in 1982 and small amounts of interest income for each year. Attached to the Forms 1040 were 15 pages of constitutional Fifth Amendment arguments and copies of various articles, correspondence, and pages from tax services. On July 11, 1983, the Internal Revenue Service assessed a $ 500 penalty under section 6702 against petitioner for filing a frivolous return for 1982. Petitioner paid 15 percent of the penalty and filed a claim for refund. That claim was denied, and, on September 27, 1983, petitioner commenced an action in the United States District Court for the District of Kansas. In a Memorandum and Order filed September 19, 1984, summary judgment was granted and costs were awarded against petitioner on the ground that his action was initiated in bad faith and for vexatious purposes because he knew, or should have known, that his position was patently frivolous and without any support in law or by court decision. In the Memorandum and Order, the court rejected petitioner's contention that the assessment of a civil penalty was barred because Garner v. United States, 424 U.S. 648 (1976), allows a taxpayer to claim the Fifth Amendment privilege on *23 his income tax return. By this Memorandum, petitioner was advised: In United States v. Brown, 600 F.2d 248 (10th Cir. 1979), the Tenth Circuit held that Garner and United States v. Sullivan, 274 U.S. 259 (1927), allow the Fifth Amendment self-incrimination privilege to be raised only as to information about the source of illegal income. The amount of income cannot be withheld by the taxpayer. See also United States v. Stillhammer, 706 F.2d 1072, 1076 (10th Cir. 1983); United States v. Irwin, 561 F.2d 198, 201 (10th Cir. 1977). Plaintiff's tax return, from which no liability could be calculated, is, in effect, no return at all. United States v. Irwin, 561 F.26 at 201; United States v. Stillhammer, 706 F.2d at 1076. * * *
In 1987, after trial by jury, petitioner was convicted of willful failure to file Federal income tax returns for 1982 and 1983, in violation of section 7203. In 1989, petitioner's conviction was affirmed by the Court of Appeals for the Tenth Circuit. In the Order and Judgment of the Court of Appeals for the Tenth Circuit filed March 6, 1989, the *24 court stated: On appeal, Mr. Gallentine claims that although he was indicted and convicted of failure to make a return, the offense he actually committed was failure to provide information required by the 1040 form, also prohibited by section 7203. The argument is without merit. This court has repeatedly held that "purported returns which do not contain information from which the I.R.S. can assess the taxpayer's tax liability are not returns within the meaning of the Internal Revenue Code or the tax regulations." United States v. Stillhammer, 706 F.2d 1072, 1075 (10th Cir. 1983); United States v. Lawson, 670 F.2d 923, 927 (10th Cir. 1982); United States v. Rickman, 638 F.2d 182, 184 (10th Cir. 1980); United States v. Brown, 600 F.2d 248, 251 (10th Cir. 1979), cert. denied 444 U.S. 917 (1979).
Notwithstanding these adverse rulings of the United States District Court for the District of Kansas and the Court of Appeals for the Tenth Circuit, petitioner contended in documents filed in this case in 1990 that the determination of deficiencies and additions to tax in this case violated *25 petitioner's constitutional rights under the Fifth Amendment. OPINION At the time of trial of this case, petitioner had stipulated to certain facts, and respondent had conceded that petitioner was entitled to certain exemptions and deductions. The only evidence presented related to petitioner's contentions that (1) he was entitled to additional charitable contributions for which he did not have canceled checks and (2) his failure to file proper income tax returns for 1982 and 1983 and to pay the income tax due was due to a good faith misunderstanding about the Fifth Amendment and not due to an intent to defraud. Charitable Contributions
With respect to the charitable contribution deductions, petitioner requests that we recognize a pattern of contributions reported on his returns for 1977 through 1981 and "redetermine deductible charitable contributions at a minimal ten percent figure of the adjusted gross income for 1982 and 1983 [which] is not unreasonable nor fatal being that there obviously is some basis for computation in light of all the testimony and evidence." Petitioner's testimony, however, is totally lacking in details sufficient for us to determine any additional *26 charitable deductions to which petitioner is entitled, and there is no justification for assuming that he is entitled to a deduction in the amount of 10 percent of adjusted gross income. The pattern on which petitioner relies is based on canceled checks for earlier years, and petitioner has no canceled checks for 1982 or 1983 beyond those reflected in concessions by respondent. Petitioner's testimony overall is unreliable, and we cannot make any additional allowance for charitable contributions. Addition to Tax for Fraud
Respondent has the burden of proving fraud for each year by clear and convincing evidence. Sec. 7454(a); Rule 142(b). The addition to tax for fraud is a civil sanction provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud. Helvering v. Mitchell, 303 U.S. 391, 401 (1938). Respondent's burden is met if it is shown that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); *27 Webb v. Commissioner, 394 F.2d 366 (5th Cir. 1968), affg. T.C. Memo. 1966-81. Existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Fraud may, however, be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Rowlee v. Commissioner, 80 T.C. 1111, 1123-1126 (1983); Stone v. Commissioner, 56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, 53 T.C. 96, 105-106 (1969). As petitioner was advised by the Court of Appeals for the Tenth Circuit, the Forms 1040 submitted by him were not valid returns. His failure to file tax returns, without more, is not proof of fraud, but it may be considered in conjunction with other facts that would establish fraudulent intent. Kotmair v. Commissioner, 86 T.C. 1253, 1261 (1986); *28 Rowlee v. Commissioner, supra.
Nonetheless, petitioner contends that he did not intend to defraud in this case because he actually filed Forms 1040 containing his name, address, and social security number. Even if those forms constituted petitioner's notification to the Internal Revenue Service that he was refusing to provide information concerning his taxable income, they do not insulate him from the additions to tax for fraud. See Granado v. Commissioner, 792 F.2d 91 (7th Cir. 1986), affg. T.C. Memo. 1985-237. Petitioner's primary contention is that he sincerely believed that he was entitled to claim the Fifth Amendment privilege on his Federal income tax returns, based upon his reading of a law review article before his returns were due. As petitioner was advised in 1984 by the Memorandum and Order of the United States District Court for the District of Kansas, the cases on which petitioner relied involved illegal income. The law review article similarly deals with nontax criminal prosecutions. Petitioner's unreported income in this case was wage income from his employer. Petitioner reported his other legal income, *29 i.e., interest and a State tax refund. It is not credible that he had any legitimate fear of incrimination from reporting his wages. There is nothing in the record that suggests that petitioner had any reason to believe that he would be incriminated in any nontax matter by proper reporting of his income and deductions on his Federal income tax returns. Moreover, petitioner's filings in this case demonstrate that he had the ability and resources to conduct legal research. In a recent opinion affirming a criminal conviction for willful failure to file returns, the Court of Appeals for the Tenth Circuit described a comparable situation as follows: The record supports a finding that * * * [the defendant taxpayer] was aware of a high probability that his understanding of the tax laws was erroneous and consciously avoided obtaining actual knowledge of his obligations. * * * he never consulted with an attorney or an accountant to verify his understanding of the tax laws. Instead, he bolstered his beliefs by attending seminars on tax avoidance and speaking with others who asserted that they were not required to file. He admitted that he knew his interpretation differed from that *30 of the IRS and millions of American citizens. * * * The mere fact that * * * [the defendant] appeared to educate himself about the tax laws does not negate the possible inference that he selectively educated himself "in order to have a defense in the event of a subsequent prosecution." United States v. Alvardo, 838 F.2d 311, 314 (9th Cir. [1988]), cert. denied, 487 U.S. 1222 (1988); see United States v. Glick, 710 F.2d [639] at 641-42 [(10th Cir. 1983)]. * * * [United States v. Fingado, 934 F.2d 1163, 1166-1167 (10th Cir. 1991).]
Petitioner persisted in relying on his Fifth Amendment claims in this case in 1990 even though the Court of Appeals for the Tenth Circuit, in 1989, and the United States District Court, in 1984, had rejected his claims. We do not believe petitioner's claims of good faith reliance on his Fifth Amendment privilege. We conclude that petitioner was attempting what the Supreme Court has stated that he cannot do, which is to "draw a conjurer's circle around" the matter of his tax liability. United States v. Sullivan, 274 U.S. 259, 264 (1927). The tax protest *31 nature of the materials printed on and attached to petitioner's filings establishes that his refusal to supply information was motivated by a desire to protest taxes rather than a fear of self-incrimination. See, e.g., Rechtzigel v. Commissioner, 703 F.2d 1063 (8th Cir. 1983), affg. 79 T.C. 132 (1982); United States v. Neff, 615 F.2d 1235 (9th Cir. 1980). Petitioner also contends that he believed he was entitled to the withholding allowances claimed on his Form W-4 and that cases relying on false Forms W-4 as badges of fraud have no application to this case. See, e.g., Granado v. Commissioner, 792 F.2d 91 (7th Cir. 1986), affg. T.C. Memo. 1985-237. Forms W-4, however, may be false only because a taxpayer claims an excessive number of withholding allowances, such as the 13 claimed by petitioner. See, e.g., Zell v. Commissioner, 763 F.2d 1139 (10th Cir. 1985), affg. T.C. Memo. 1984-152. The itemized deductions to which petitioner was entitled ($ 5,100 in 1982 and $ 5,400 in 1983) do not approach the amount necessary to justify his claim of 13 withholding *32 allowances (approximately $ 15,500). (The Court takes judicial notice that the Instructions to Forms W-4 for 1982 advised employees that the employer was required to send to the Internal Revenue Service copies of such forms claiming more than 14 withholding allowances.) We thus have found that petitioner's Form W-4 was knowingly false. There are other indicia of fraud in this case. Petitioner admitted that he ceased using bank accounts and began conducting his affairs in cash in order to avoid Internal Revenue Service seizure of his assets. Willful conduct indicating an intent to defeat and evade tax includes "concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal." Spies v. United States, 317 U.S. 492, 499 (1943). In his post-trial brief, petitioner attempts to repudiate facts set forth in the stipulation signed by him and filed at the beginning of trial. He now argues that the Court lacks jurisdiction to adjudicate the additions to tax in this case. While he has jumped from one frivolous *33 position to another, he has refused to acknowledge errors, notwithstanding the adverse rulings of several courts against him. His claims of good faith are thus unpersuasive. On the entire record, there is clear and convincing evidence that petitioner's entire course of conduct was intended to evade or defeat the payment of Federal income taxes that he knew to be owing. The additions to tax for fraud will be sustained. To take account of the stipulation of settled issues, Decision will be entered under Rule 155.