**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**September 2, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

PAUL KENNETH CROMAR,

Defendant - Appellant.

No. 25-4002
(D.C. No. 2:23-CR-00159-HCN-1)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **MORITZ**, and **ROSSMAN**, Circuit Judges.
_____

Paul Kenneth Cromar, proceeding pro se, appeals his convictions for tax evasion under 26 U.S.C. § 7201 and forcible rescue of seized property in violation of 21 U.S.C. § 7212(c).  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

**Background and Procedural History[1]**

Subscribing to the legal theories associated with the sovereign-citizen and tax-protester movements, Cromar failed to pay taxes or file a tax return from 1999 to 2005.  In 2017, the United States sued Cromar seeking to recover the unpaid income taxes and to foreclose tax liens through a sale of his real property in Cedar Hills, Utah.  Cromar never answered the complaint but filed numerous motions challenging the court's subject-matter jurisdiction and the government's taxing authority.  The court denied the motions and ultimately entered default judgment against Cromar, determining he owed more than $1 million in back taxes and penalties, a liability that generated statutory liens on his property.  Following an unsuccessful interlocutory appeal to this court, the district court entered an order of foreclosure and judicial sale, requiring Cromar and his wife to vacate the property by April 5, 2019.  Cromar appealed that order, and we affirmed, specifically rejecting his constitutional challenges to the government's taxing authority.  *See United States v. Cromar*, 807 F. App'x 821, 824-25 (10th Cir. 2020).[2]

---

[1] We relay the facts in the light most favorable to the government as appropriate when reviewing the sufficiency of the evidence to uphold a conviction. *United States v. Goldesberry*, 128 F.4th 1183, 1191 (10th Cir. 2025).

[2] While the tax case was unfolding, the Cromars filed a collateral action in Utah state court against the United States and certain IRS officials and government attorneys, accusing the defendants of conspiring to implement an unconstitutional federal income tax with the aim of stealing the Cromars' property.  The government removed that case to federal court, and it was ultimately dismissed.  This court affirmed.  *See Cromar v. United States*, 816 F. App'x 235, 240 (10th Cir. 2020).

In May 2019, Gary Chapman, the IRS agent assigned to handle the sale of the Cedar Hills property, discovered that Cromar and his wife were still living there. He enlisted the help of law enforcement who removed the Cromars from the property on June 25, 2019, and then changed the locks. That September, Chapman sold the property at auction to Copper Birch LLC. Copper Birch recorded the deed of transfer on April 29, 2020. Days before, on April 23, Cromar had broken into the house and moved back in along with his wife. Upon learning this, Copper Birch retained counsel and sued the Cromars for unlawful detainer in state court.

After two occupancy hearings, the state court sided with Copper Birch and ordered the Cromars to vacate the premises by September 5, 2020. The order authorized law enforcement to forcibly remove them if they failed to comply. They did not comply, so on September 24, law enforcement returned to the house to forcibly remove them. Nobody answered the door or heeded the officers' calls to come outside. Around the same time, however, separate law enforcement officers encountered Cromar at a shopping center and convinced him to call his wife, who was in the house. Eventually Cromar convinced his wife to peacefully leave the premises. When police officers cleared the house, they found sandbags, a cache of weapons and ammunition, and wooden boards placed tactically throughout the house.

In April 2023, Cromar was indicted on one count of tax evasion under § 7201, one count of obstruction under § 7212(a), and one count of forcible rescue of seized property under § 7212(b). He chose to represent himself, although the district court appointed the public defender as standby counsel. Over the course of an eight-day

3

jury trial, the government called sixteen witnesses and Cromar called fourteen. After three days of deliberations, Cromar was convicted on the tax evasion and forcible rescue counts and acquitted on the obstruction count. The district court sentenced him to 72 months' incarceration followed by three years of supervised release. This appeal followed.

## Analysis

Cromar raises a plethora of issues on appeal, many of which are not sufficiently developed to allow for meaningful review, notwithstanding the liberal construction we have accorded his pro se filings. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (court construes pro se briefs liberally but will not act as litigant's attorney); *Kelley v. City of Albuquerque*, 542 F.3d 802, 819 (10th Cir. 2008) (inadequately briefed issues do not invoke appellate review). He has adequately presented four issues: (1) the district court lacked subject matter jurisdiction; (2) the evidence was insufficient to sustain a conviction on both counts; (3) the district court's conduct of the case violated his due process rights; and (4) the government was not entitled to restitution. We address each of these arguments in turn.

### I.

The overarching theory of Cromar's defense is that the district court lacked subject-matter jurisdiction to adjudicate any criminal charge against him based on his failure to pay a "*non-apportioned direct income tax* that was assessed by the IRS under authority of the 16th Amendment." Aplt. Opening Br. at 18. This argument is

4

a common refrain in tax protester cases.  It goes like this:  (1) the Constitution requires direct taxes[3] to be apportioned among the states according to each state's population, *see* Art. I, § 9, cl. 4; (2) income taxes are not so apportioned; but (3) income taxes have been referred to as "direct" taxes by this court, *see United States v. Collins*, 920 F.2d 619, 629 (10th Cir. 1990)[4]; accordingly (4) federal courts lack jurisdiction to enforce the collection of such non-apportioned direct taxes.

As we observed in *Collins*, "[e]fforts to argue that federal jurisdiction does not encompass prosecutions for federal tax evasion have been rejected as either 'silly' or 'frivolous' by a myriad of courts throughout the nation."  920 F.2d at 629 (collecting cases); *see also United States v. Hansen*, 929 F.3d 1238, 1245 (10th Cir. 2019); *United States v. Gerhard*, 615 F.3d 7, 25 n.9 (1st Cir. 2010); *United States v. Drachenberg*, 623 F.3d 122, 124 (2d Cir. 2010); *United States v. Cooper*, 170 F.3d 691, 691 (7th Cir. 1999).  Yet Cromar argues the Supreme Court's recent decision in *Moore v. United States*, 602 U.S. 572 (2024), upends this line of authority because it makes clear that income taxes are indirect taxes, not direct taxes like we said in

---

[3] "Generally speaking, *direct* taxes are those taxes imposed on persons or property."  *Moore v. United States*, 602 U.S. 572, 582 (2024).  Because direct taxes must be apportioned among the states according to population, Congress has enacted a direct tax only rarely and not since the Civil War.  *Id.*  "*[I]ndirect* taxes are the familiar federal taxes imposed on activities or transactions.  That category of taxes includes . . . incomes taxes."  *Id.* at 582-83.  Indirect taxes are not subject to the apportionment clause.  *Id.* at 583.

[4] *Collins* was superseded on other grounds by the Paperwork Reduction Act of 1995, as noted in *Lewis v. C.I.R.*, 523 F.3d 1272, 1276-77 (10th Cir. 2008).

*Collins*.  According to Cromar, this means *Collins* was wrongly decided and the district court was therefore not entitled to rely on it in adjudicating his criminal case.

We reject this argument for the same reasons we explained in Cromar's civil tax case when we declined his invitation to "delve into the difficult question of the distinction between direct and indirect taxes."  *Cromar*, 807 F. App'x at 824 (internal quotation marks omitted).  To reiterate what we said then, since ratification of the Sixteenth Amendment, whether an income tax is a direct tax or indirect tax is immaterial.  It is beyond dispute that "Congress has the power to tax the income of individuals."  *United States v. Stillhammer*, 706 F.2d 1072, 1077 (10th Cir. 1983).  Further, in this case as "in every federal criminal prosecution, subject-matter jurisdiction comes from 18 U.S.C. § 3231.  That's the beginning and the end of the jurisdictional inquiry."  *United States v. Tony*, 637 F.3d 1153, 1158 (10th Cir. 2011) (internal quotation marks, brackets, and ellipsis omitted).  *Moore*, a civil case that upheld the constitutionality of the Mandatory Repatriation Tax, is simply inapposite.[5]

---

[5] Cromar refines his jurisdiction argument in his reply brief, claiming his misplaced reliance on *Collins*'s characterization of income tax as a direct tax negated the willfulness element of the tax evasion offense.  This court does not ordinarily consider arguments raised for the first time in a reply brief, and there is no reason to do so here.  *See United States v. Walker*, 85 F.4th 973, 989 n.13 (10th Cir. 2023).  Moreover, Cromar fails to cite in the record where he raised this issue in the district court, as required by our local rules.  *See* 10th Cir. R. 28.1(A) ("For each issue raised on appeal, all briefs must cite the precise references in the record where the issue was raised and ruled on.").  Cromar objected repeatedly to the district court's subject matter jurisdiction and tendered numerous theories in defending against the tax evasion count.  But he did not advance this one.  And "our general rule against considering new arguments on appeal applies equally when a litigant changes to a new theory on appeal that falls under the same general category as an argument

II.

A.

Cromar challenges the sufficiency of the evidence to support his conviction of forcible rescue of seized property under 26 U.S.C. § 7212(b).  We review sufficiency of the evidence de novo.  *United States v. Davis*, 995 F.3d 1161, 1166 (10th Cir. 2021).  "Evidence is sufficient to support a conviction if, viewing the evidence and all reasonable inferences from it in the light most favorable to the government, a rational trier of fact could find the defendant guilty beyond a reasonable doubt."  *Id.* (internal quotation marks omitted).

Section 7212(b) criminalizes the forcible rescue of "any property after it shall have been seized under this title."  "This title" refers to Title 26, the Internal Revenue Code.  The essential elements of the offense are seizure and rescue.  *United States v. Oliver*, 421 F.2d 1034, 1036 (10th Cir. 1970).  Cromar argues the government failed to prove the seizure element because his house was seized under Title 28, not Title 26.

This argument is both factually and legally incorrect.  Title 28 sets forth the procedures to be used when selling real estate pursuant to a court order.  *See* 28 U.S.C. § 2001(a) (requiring public sale) and (b) (requiring notice and a hearing).  The district court in the civil tax case invoked these provisions in ordering Cromar's property to be auctioned at a public sale.  *Cromar*, 807 F. App'x at 825.  But that

---

presented at trial."  *United States v. Nelson*, 868 F.3d 885, 891 n.4 (10th Cir. 2017) (internal quotation marks omitted).

doesn't mean the property was *seized* under Title 28. It is clear from the order of foreclosure and judicial sale that the property was seized under section 7403 of Title 26, which empowers the IRS to seize the property of delinquent taxpayers. *See* R. vol. 3 at 276 ("Under 26 U.S.C. § 7403, the United States is entitled to enforce its liens against the Subject Property in order to apply the proceeds towards the tax liabilities of Paul Kenneth Cromar."). The jury was shown the order of foreclosure and judicial sale. R. vol. 4 at 612-13. And several IRS revenue officers testified regarding the nature of the federal tax lien and how it led to the foreclosure order. *E.g.*, *id.* at 492-97. We agree with the government this evidence was sufficient to establish that Cromar's property was seized under Title 26.

B.

Cromar argues the government "was wrongfully and prejudicially allowed to improperly substitute Form [4549s] which are not actual or real tax returns, for the required evidence of a 'subscribed' tax return for each tax year in dispute." Aplt. Opening Br. at 29 (emphasis omitted). We construe this argument as a challenge to the sufficiency of the evidence on the tax evasion count.

"To prove evasion under § 7201, the government must show (1) a substantial tax liability, (2) willfulness, and (3) an affirmative act constituting evasion or attempted evasion." *United States v. Hoskins*, 654 F.3d 1086, 1090 (10th Cir. 2011) (internal quotation marks omitted). Cromar appears to argue the government failed to establish a tax liability because, having no tax returns as evidence, it relied instead on an audit report prepared by a revenue agent and submitted on Form 4549. We

8

reject this argument. A filed tax return is not an element of tax evasion under § 7201. As the government points out, tax evaders often do not file tax returns. And this court has acknowledged that the government's evidence in tax evasion cases typically is circumstantial precisely because "direct proof is often unavailable." *United States v. Thompson*, 518 F.3d 832, 850 (10th Cir. 2008) (internal quotation marks omitted).

In this case, the government's proof consisted of an IRS audit of Cromar's finances. The auditor gave meticulous testimony about the audit process, including his collection of bank records and other financial information and his interview of Cromar. The auditor explained how he used that information to calculate Cromar's "deficiency amounts" for each tax period at issue. R. vol. 4 at 360. He also testified that Cromar was advised of the "taxpayer bill of rights," including his right to protest the deficiency amount. *Id.* at 362-64. Cromar did not file a protest or otherwise lodge any formal objection to the auditor's calculations. Accordingly, the auditor explained that his certification ultimately became a "substitute for return," which the IRS creates when the taxpayer fails to file a tax return. *Id.* at 378. This evidence was sufficient for a reasonable juror to find that Cromar owed a substantial tax liability.

## III.

Cromar's due process argument encompasses a host of alleged errors by the district court, but his arguments are either frivolous or not sufficiently developed to invoke this court's review. Cromar accuses the district court of an "improper and

9

invalid use of the '*Touhy*' decision"[6] to deprive him of his Sixth Amendment right to compulsory process. Aplt. Opening Br. at 38. He claims the court blocked subpoenas to "almost all" of his prospective witnesses and "refus[ed] to issue essential subpoenas to critical desired defense witnesses like Mark Chapman and Mr. Scambos." *Id.* As the government points out, both those witnesses testified at trial, and Cromar examined them without restriction. Cromar identifies no other witnesses or documents as to which he was denied a subpoena, and he provides no description of the evidence lost as a result. As we noted earlier, perfunctory allegations of error that fail to frame and develop an issue are insufficient to invoke appellate review. *Kelley*, 542 F.3d at 819. Cromar has not sufficiently developed this argument for our consideration.

He next argues his due process rights were violated by the court's issuance of oral rulings rather than formal "Orders of the Court." Aplt. Opening Br. at 50 (emphasis omitted). He does not identify any particular ruling here but seems generally to contest the court's conduct of the case. The district court was not required to reduce to writing every ruling that it made over the course of a multi-year prosecution and week-long jury trial. District courts frequently rule from the bench. In this case, such oral rulings resulted in minute orders and written transcripts to which Cromar plainly has access. This argument is frivolous.

---

[6] *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

Finally, Cromar generally takes issue with the jury instructions but again fails to identify any particular instruction that was requested and denied or given over his objection. This issue is not sufficiently developed to invoke appellate review.

IV.

Cromar objects to the restitution award to the United States on the grounds that the government is not a statutory person and therefore cannot be a victim. This argument lacks merit. It's well settled that the government can be a victim for purposes of restitution. *United States v. Quarrell*, 310 F.3d 664, 677 (10th Cir. 2002).

## Conclusion

Based on the evidence presented at trial, a rational jury could readily find that Cromar committed tax evasion and forcibly rescued seized property in violation of the internal revenue code. Cromar has failed to show any due process violations or other reversible errors by the district court. The district court's judgment is therefore affirmed.

Entered for the Court

Nancy L. Moritz
Circuit Judge